MacLELLAN v. DEPARTMENT OF CORRECTIONS.

1. STATES—CIVIL SERVICE EMPLOYEE—PRIVATE SUPPLEMENTARY EMPLOYMENT.

    Refusal of classified State employee to obey correction commission's directive to cease supplementary employment for which he had not obtained such commission's prior written approval as required by civil service commission's directive *held*, ample cause for his discharge from State employment in the classified service (State Civil Service Commission Directive Relative to Supplementary Employment).

2. SAME—CONSTRUCTION OF CIVIL SERVICE COMMISSION DIRECTIVE.

    State civil service commission's directive requiring written approval of supplementary employment by classified employees of the State does not require that written approval be given upon request or that written approval must be given unless supplementary employment would conflict or interfere with employee's State duties (State Civil Service Commission Directive Relative to Supplementary Employment).

Appeal from Civil Service Commission. Submitted February 6, 1964. (Calendar No. 50, Docket

REFERENCES FOR POINTS IN HEADNOTES

[1] 15 Am Jur 2d, Civil Service § 36.
[2] 15 Am Jur 2d, Civil Service § 8.

No. 50,267.)  Decided September 2, 1964.  Rehearing denied November 4, 1964.

Hearing under civil service procedure by John A. MacLellan against the Department of Corrections to review his discharge and to obtain reinstatement as a member of the pardons and parole board.  Order entered upholding dismissal from employment. Plaintiff appeals, joining Civil Service Commission as party defendant.  Affirmed.

*Anderson, Carr & Street* (*Cassius E. Street, Jr.*, of counsel), for plaintiff.

*Frank J. Kelley*, Attorney General, *Robert A. Derengoski*, Solicitor General, *James R. Ramsey*, Acting Solicitor General, on application for rehearing, and *Harry G. Iwasko, Jr.*, Assistant Attorney General, for defendants.

Souris, J.  On June 1, 1960, plaintiff commenced service by provisional appointment of the corrections commission as a member of the pardons and parole board.  Six months later he attained permanent civil service status in that position, following successful completion of a competitive examination and certification therefor by the corrections commission.  About a year later he was discharged by the corrections commission upon his refusal to comply with an order to cease certain private employment[1] in which he had engaged while employed by the State.  He appealed his discharge to a hearing board appointed by the civil service commission

---

[1] Mr. MacLellan, a licensed attorney, had been a registered legislative agent (CL 1948 and CLS 1961, § 4.401 *et seq.* [Stat Ann 1961 Rev § 2.601 *et seq.*]) for a hospital association for several years prior to and including the legislative session of 1960.  He continued to perform some services for the association on a part-time basis after his appointment to the pardons and parole board.  He described his services to the association after his appointment as special counsel for legislative affairs, advising the association "as to how to get

and then, upon the board's affirmance of his discharge, he appealed to the commission itself. Upon the civil service commission's affirmance of his discharge, plaintiff applied for and was granted our leave to appeal the commission's actions by appeal in the nature of certiorari. We conclude, upon review of the appellate record and briefs of counsel, that the civil service commission's order must be affirmed.

A civil service commission directive, in force when plaintiff first was appointed provisionally and reissued in substantially the same form[2] in 1961 while

things done" in the legislature, but not including any activities which could be regarded as lobbying. "So far as carrying out any of the suggestions I made, they had their own paid lobbyist who would carry out any of the things that had to be done in terms of actual efforts to discuss and promote the legislation with the individual legislators or committees."

The fact is that the record is barren of any evidence that Mr. MacLellan performed any services, after his employment by the State, for which registration would have been required by the cited statute. Indeed, there is no evidence in this record to support even a suggestion that his private employment in any way affected his State duties. It was conceded by defendants that Mr. MacLellan performed his State duties ably.

[2] "To: All appointing authorities and personnel officers

"Subject: Permissibility of supplementary employment.

"On August 5, 1954, this commission issued a directive summarizing considerations relative to supplementary employment. One of the essential points of that directive pertained to the necessity of securing written approval before engaging in supplementary employment and then keeping the appointing authority informed of any subsequent change in that employment in order that approval might, at all times, be a matter of record.

"In recent months questions have been raised which lead us to wonder whether State classified employees are fully aware of this directive or if violations are occurring. In order that there will be no misunderstanding about the contents of the directive and the procedure that is to be followed, we are reissuing the directive at this time for the benefit of all concerned.

"Following are considerations relative to this subject:

"1. Supplementary employment is not encouraged but is permitted under proper conditions.

"2. State and other governmental employment, much more than private employment, is open to public view and critical scrutiny. State employees therefore must consider that what they do as individuals will reflect on the State service either to its credit or discredit. For this reason a State employee should not engage in any employment supplementary to his State work without carefully con-

he served in permanent civil service status, forbade civil service employees from engaging in any supplementary employment without the prior written approval of the appointing authority. We do not read this directive to require that written approval be given for such supplementary employment upon request therefor or even that written approval must be given unless such employment would conflict or interfere with the employee's State duties. If such had been the intention of the civil service commission, it would have directly authorized civil service employees to engage in such supplementary employment, perhaps with mere notice thereof to their appointing authority, but without requiring their appointing authority's prior written approval. Such requirement of prior written approval implicitly carries with it the power to deny such approval even

---

sidering its possible effect on himself, his State job, and on the State service as a whole.

"3. No State classified employee shall hold a full-time job, or its equivalent, in addition to his regular full-time State employment. Such double employment is not in the best interest of the State civil service, since it would tend to impair the efficiency of an employee's work performance and might otherwise interfere with his full-time State employment.

"4. Under the specific restrictions provided in this notice a classified employee, if he desires, may hold a part-time job in addition to his regular full-time State employment. This additional employment must in no way conflict with the employee's hours of State employment, or in quantity or nature interfere in any way with the satisfactory and impartial performance of his State duties.

"5. Any supplementary part-time employment of full-time or part-time State classified employees shall be in work situations which in no way conflict with the employee's official State duties; and which would not in any way interfere with the rendering of completely impartial service and employment loyalty to the State; or which would in any way prevent the satisfactory fulfillment of duties as a State employee.

"6. A classified State employee shall secure the written approval of the appointing authority of his agency before engaging in any supplementary employment, and shall keep the appointing authority fully informed of any contemplated changes in supplementary employment and have his approval therefor.

"You are requested to post copies of this directive where they can be seen by all employees. Additional copies may be secured by addressing a request to the civil service commission."

when there is no conflict or interference with State duties.

The record discloses that plaintiff never obtained the prior written approval of the corrections commission to engage in supplementary employment while serving as a member of the pardons and parole board. While the record discloses that the commission was advised at the time of plaintiff's provisional appointment that he proposed to perform some services for a hospital association on a part-time basis, its prior written approval thereof was never obtained. The wisdom of requiring such prior written approval is manifest upon review of this record much of which was made in an effort to establish what was the commission's understanding. The only certainty which emerges from the record is that a misunderstanding occurred—a misunderstanding that could have been avoided by compliance with the directive's requirement for prior written approval.

We need not consider under what circumstances such written approval may be revoked once issued, for that is not the factual posture of this case. Plaintiff, never having had the commission's prior written approval of his private employment, is in no better position than he would have been had he requested such written approval belatedly and it had been denied. Absent written approval he could not continue to perform services for the hospital association without violating the civil service commission's directive, and his refusal to obey the correction commission's order to discontinue such private employment was ample cause for his discharge.

*Groehn v. Corporation & Securities Commission,* 350 Mich 250, is inapt. In that case the defendant commissioner discharged Groehn for past conduct previously condoned notwithstanding Groehn's offer to cease such activities in the future. While we

reversed even the civil service commission's 3-month suspension of Groehn, this Court indicated quite clearly in the last paragraph of its opinion that it did not disapprove of that portion of the commission's order requiring Groehn to desist from such activities in the future while in State service. There is nothing in that case which can be construed to deny the corrections commission power to forbid pardons and parole board members from engaging in the future in private employment.

Affirmed. Costs may be taxed.

KAVANAGH, C. J., and DETHMERS, BLACK, SMITH, O'HARA, and ADAMS, JJ., concurred with SOURIS, J.

KELLY, J., concurred in result.