COUNCIL NO 11, AMERICAN FEDERATION OF STATE, COUNTY,
& MUNICIPAL EMPLOYEES, AFL-CIO v CIVIL SERVICE
COMMISSION

Docket No. 77-2165. Submitted January 9, 1978, at Detroit.—Decided
    December 5, 1978. Limited leave to appeal granted, 406 Mich
    920.

    Council No. 11, American Federation of State, County and Munici-
    pal Employees (AFSCME), AFL-CIO, Myrl Lockett, Phil Helms,
    Betty Pearson, Bing Johnson and Robert G. Cusack, on behalf
    of themselves and on behalf of all employees in the State of
    Michigan classified service, commenced an action against the
    Michigan Civil Service Commission challenging, in view of the
    1976 passage of the political freedom act, the defendant's
    continued enforcement of Civil Service Commission Rule 7,
    which imposes a blanket ban on all political activity by classi-
    fied employees.

        Wayne Circuit Court, Roy J. Daniel, J., issued a declaratory
    judgment that while the defendant's power to regulate condi-
    tions of employment was broad, it did not possess authority to
    regulate an employee's private off duty activities until and
    unless such activities interfere with job performance. The
    circuit court also ruled that while the 1976 political freedom
    act was a proper and constitutional exercise of legislative
    authority, the defendant's Rules 7.1 and 7.3 could be saved if
    interpreted narrowly and that to the extent that a certain
    subsection of the statute conflicted with Rule 7.3, the subsection
    of the statute "may be without application to certain members
    of the classified state service". The trial court further ruled
    that since a political campaign requires a personal, emotional,
    and physical dedication, the defendant was justified in discharg-

REFERENCES FOR POINTS IN HEADNOTES
[1] 26 Am Jur 2d, Elections § 387.
    63 Am Jur 2d, Public Officers and Employees §§ 284, 285.
    Validity of statutes restricting political activities of public officers
        or employees. 28 ALR3d 717.
[2, 5] 63 Am Jur 2d, Public Officers and Employees §§ 264, 280.
[3] 15A Am Jur 2d, Civil Service §§ 10-12.
[4] 16 Am Jur 2d, Constitutional Law §§ 204-209.

ing plaintiff Cusack who had filed a petition to become a candidate for sheriff in Ionia County. The defendant appeals and the plaintiffs cross-appeal. *Held:*

1. The defendant's blanket ban on political activity by civil service employees is an improper restriction of First Amendment rights since the defendant was unable to demonstrate a compelling state interest which would justify the restrictions. Thus Rules 7.1 and 7.3 are impermissibly overbroad and a determination must be made in each case whether an employee's political activities have a detrimental impact on job performance.

2. Since plaintiff Cusack was discharged without a showing that his political activities affected his job performance, the lower court ruling dismissing Cusack's complaint must be reversed and the matter remanded.

Affirmed in part, reversed in part, and remanded for further proceedings.

1. CONSTITUTIONAL LAW—WORK AND LABOR—ADMINISTRATIVE LAW—CIVIL SERVICE—POLITICAL FREEDOM ACT—EMPLOYEE'S POLITICAL ACTIVITY—STATUTES.

The political freedom act permits civil servants to engage in certain types of political activities in their off-duty time; further the act prevents any unwilling employee from being coerced into engaging in political activity (MCL 15.401 *et seq.;* MSA 4.1702[1] *et seq.).*

2. CONSTITUTIONAL LAW—FIRST AMENDMENT—RELINQUISHMENT OF RIGHTS—CONDITION OF PUBLIC EMPLOYMENT—POLITICAL ACTIVITIES.

The state cannot require an individual to relinquish rights guaranteed him or her by the First Amendment as a condition of public employment; when political activities of a public employee are unrelated to his or her job responsibilities, the employee must be treated as a member of the "general public" for purposes of adjudicating First Amendment rights.

3. ADMINISTRATIVE LAW—CIVIL SERVICE COMMISSION—PLENARY POWERS—LEGISLATIVE CONTROLS—EMPLOYEE'S POLITICAL ACTIVITY.

The Civil Service Commission has broad plenary powers to regulate internal civil service procedures; such procedures are not subject to legislative controls; however, it is beyond the authority of the commission to restrict an employee's political activity when that activity is not engaged in during working hours and does not actually affect job performance.

4. CONSTITUTIONAL LAW—FIRST AMENDMENT—COMPELLING STATE IN-
    TEREST.

> The state must demonstrate a compelling state interest in order
> to justify a restriction of First Amendment rights.

5. CONSTITUTIONAL LAW—CIVIL SERVICE COMMISSION—BAN ON EM-
    PLOYEE POLITICAL ACTIVITY—CASE-BY-CASE ANALYSIS—CIVIL
    SERVICE COMMISSION—RULES.

> Rules of the Michigan Civil Service Commission which impose a
> blanket ban on all off-duty political activities by state classified
> employees are impermissibly overbroad; a case-by-case analysis
> should be made in each instance to determine whether an
> employee's off-duty political activity adversely affects his on-
> the-job performance (Civil Service Commission Rules 7.1, 7.3).

*Zwerdling & Maurer* (by *George B. Washington),* for plaintiffs.

*MacLean, Seaman, Laing & Guilford,* for defendants.

Amicus Curiae: *Edward M. Wise (Robert S. Rollinger* and *Sheldon L. Kay,* of counsel), for the American Civil Liberties Union of Michigan.

Before: ALLEN, P.J., and D. E. HOLBROOK, JR. and M. J. KELLY, JJ.

D. E. HOLBROOK, JR., J. This dispute involves the extent to which state civil service employees may exercise their fundamental rights to speech and association during nonworking hours by engaging in political activities. Specifically at issue are Michigan Civil Service Commission Rule 7, which imposes a blanket ban on political activity by classified employees, and the so-called "political freedom act", 1976 PA 169, MCL 15.401 *et seq.;* MSA 4.1702(1) *et seq.,* which allows classified employees to engage in enumerated types of political activities.

The case went to trial on stipulated facts. Plaintiff American Federation of State, County and Municipal Employees Council 11 represents approximately 6500 employees in the classified civil service. Plaintiff Robert Cusack was employed as an "Attendant Nurse 04" until he was discharged for the sole reason that he had filed a petition to become a candidate for sheriff in Ionia County. The other individual plaintiffs are current employees in the classified civil service. In view of the passage of MCL 15.401 *et seq.;* MSA 4.1702(1) *et seq.,* plaintiffs brought suit to challenge defendant commission's continued enforcement of Rule 7 which prohibits any political activities by classified employees.

The trial court issued a declaratory judgment which concluded that while the commission's power to regulate conditions of employment was broad, the commission did not possess authority, either express or implied, to regulate an employee's private off-duty activities until and unless such activities affect, interfere with or conflict with job performance. Further the trial court concluded that 1976 PA 169 was a proper and constitutional exercise of legislative authority. The trial court concluded that if narrowly interpreted, commission Rules 7.1 and 7.3 could be saved. To the extent MCL 15.402(c); MSA 4.1702(2)(c), conflicted with Rule 7.3, the trial court ruled the statutory subsection "may be without application to certain members of the classified state service". Since the court concluded a political campaign requires a personal, emotional and physical dedication, the court concluded the commission was justified in discharging plaintiff Cusack. In short, the trial court attempted to uphold both the statute and the conflicting commission rules. Both plaintiffs and

defendant appeal various aspects of the lower court ruling.

Both sides present compelling constitutional and policy arguments. In its most basic terms, the dispute involves the clash between commission rules, promulgated under Const 1963, art 11, § 5, which are designed to keep politics out of the state civil service and the fundamental freedoms of speech and association guaranteed all citizens by both the Michigan and Federal Constitutions.

Defendant commission contends the Legislature is without power to legislate in any area within the sphere of authority of the commission. According to the commission, Const 1963, art 11, § 5 grants the commission exclusive jurisdiction to prohibit any political activities by civil servants since the commission is empowered to regulate all conditions of employment.

The constitutional amendment which established the Michigan Civil Service Commission has been in effect since January 1, 1941. It is undisputed that the civil service system was established to put an end to the evils of the "spoils system" which had politicized all levels of state government. The goal of the amendment was to improve the classified civil service by the adoption of a merit system. *Reed v Civil Service Comm,* 301 Mich 137, 154–155; 3 NW2d 41 (1942).

In pertinent part, Const 1963, art 11, § 5 reads:

"The commission shall classify all positions in the classified service according to their respective duties and responsibilities, fix rates of compensation for all classes of positions, approve or disapprove disbursements for all personal services, determine by competitive examination and performance exclusively on the basis of merit, efficiency and fitness the qualifications of all candidates for positions in the classified service,

make rules and regulations covering all personnel transactions, and *regulate all conditions of employment* in the classified service." (Emphasis supplied.)

In essence, the commission takes the position that in view of the history surrounding the amendment, the grant of power to "regulate *all* conditions of employment" allows the commission to impose a blanket ban on political activity because such activity is inherently at odds with the goals of the amendment.

Pursuant to the amendment the commission has promulgated the following rules:

"Rule 7.1 Prohibited Activities.—No employee in the state civil service shall engage in any political activity while on duty, nor shall he be or become: An officer in a political party or organization; a member of any political party committee formed or authorized under the general election laws of the state; a delegate to any state, district or county convention held by any political party in this state; a member of any national political party committee; a delegate from this state to any national political party convention.

"Rule 7.3 Candidates for Public Office.—No employee in the state civil service shall become a candidate for nomination to any partisan elective office without first obtaining a leave of absence. The leave of absence shall remain in force and effect until the candidacy becomes official by the filing of petitions or by the action of a caucus or a convention, or by a filing fee. When a state civil service employee becomes an official candidate for elective office set forth as above, he shall at once resign from his civil service position."

According to the commission, the purpose of the amendment was to eliminate politics from the classified service and enforcement of these rules is necessary to carry out that purpose. Such sweeping prohibitions are necessary, the commission

argues, to prevent political considerations from, however subtly, infecting the integrity and efficiency of the civil service.

In 1976 the "political freedom act", MCL 15.401 *et seq.; MSA* 4.1702(1) *et seq.,* was enacted to permit civil service employees (and employees of political subdivisions of the state) to engage in certain political activities. Several of the more important statutory sections provide:

MCL 15.402; MSA 4.1702(2):

"An employee of the state classified civil service may:

"(a) Become a member of a political party committee formed or authorized under the election laws of this state.

"(b) Be a delegate to a state convention, or a district or county convention held by a political party in this state.

"(c) Become a candidate for nomination and election to any district, county, city, village, township, school district, or other local elective office without first obtaining a leave of absence from his employment. If the person becomes a candidate for elective office in the executive or legislative branches of the state or for the supreme court or court of appeals, the person shall request and shall be granted a leave of absence without pay when he complies with the candidacy filing requirements, or 60 days before any election relating to that position, whichever date is closer to the election.

"(d) Engage in other political activities on behalf of a candidate or issue in connection with partisan or non-partisan elections."

MCL 15.404; MSA 4.1702(4):

"The activities permitted by sections 2 and 3 shall not be actively engaged in by a public employee during those hours when that person is being compensated for the performance of that person's duties as a public employee."

MCL 15.405; MSA 4.1702(5):

"A public employer, public employee or an elected or appointed official may not personally, or through an agent, coerce, attempt to coerce, or command another public employee to pay, lend, or contribute anything of value to a party, committee, organization, agency, or person for the benefit of a person seeking or holding elected office, or for the purpose of furthering or defeating a proposed law, ballot question, or other measure that may be submitted to a vote of the electors."

MCL 15.406; MSA 4.1702(6):

"(1) An employee of a political subdivision of this state whose rights under this act are violated or who is subjected to any of the actions prohibited by section 5 may make a complaint to that effect with the department of labor. The department shall hold hearings to determine whether a violation has occurred. If a violation has occurred, the department shall so state on the record and may order the issuance of back pay and reinstatement as an employee for a person whose rights were violated.

"(2) Upon motion by the department to the circuit court, the court may issue an injunction to enforce the order of the department.

"(3) The department of civil service shall promulgate rules for hearing alleged violations of this act by a state employee."

In short, the act permits civil servants to engage in certain types of political activities in their off-duty time. Further the act prevents any unwilling employee from being coerced into engaging in political activity.

Believing its rules are constitutionally mandated and believing the Legislature is without power to legislate in the area of civil service employment, the commission has ignored the statute and continues to enforce Rules 7.1 and 7.3.

No one challenges the broad authority of the commission to regulate on-duty activities of classified employees and to regulate those off-duty activities which actually conflict with job performance. While we recognize that off-duty political activity may affect job performance in some cases, we do not believe that the commission has the authority to impose a blanket ban on all political activities by all civil service employees. Insofar as the commission rules ban all off-duty political activity, they are impermissibly overbroad and invalid.

It is clear that the state cannot require an individual to relinquish rights guaranteed him or her by the First Amendment as a condition of public employment. *Abood v Detroit Board of Education,* 431 US 209, 233–235; 97 S Ct 1782; 52 L Ed 2d 261 (1977), *Elrod v Burns,* 427 US 347, 357–360; 96 S Ct 2673; 49 L Ed 2d 547 (1976). It is equally clear, according to *Kusper v Pontikes,* 414 US 51, 56–57; 94 S Ct 303; 38 L Ed 2d 260 (1973), that,

"There can no longer be any doubt that freedom to associate with others for the common advancement of political beliefs and ideas is a form of 'orderly group activity' protected by the First and Fourteenth Amendments. *NAACP v Button,* 371 U.S. 415, 430 [83 S Ct 328; 9 L Ed 2d 405 (1963)]; *Bates v Little Rock,* 361 U.S. 516, 522–523 [80 S Ct 412; 4 L Ed 2d 480 (1960)]; *NAACP v Alabama,* 357 U.S. 449, 460–461 [78 S Ct 1163; 2 L Ed 2d 1488 (1958)]. The right to associate with the political party of one's choice is an integral part of this basic constitutional freedom. *Williams v Rhodes,* 393 U.S. 23, 30 [89 S Ct 5; 21 L Ed 2d 24 (1968)]. *Cf. United States v Robel,* 389 U.S. 258 [88 S Ct 419; 19 L Ed 2d 508 (1967)]."

When political activities of a public employee are unrelated to his or her job responsibilities, the employee must be treated as a member of the

"general public" for the purpose of adjudicating First Amendment rights. *Phillips v City of Flint,* 57 Mich App 394, 401–402; 225 NW2d 780 (1975), citing *Pickering v Board of Education of Twp High School Dist 205, Will County,* 391 US 563; 88 S Ct 1731; 20 L Ed 2d 811 (1968).

There is no question that the commission is granted broad plenary powers to regulate internal civil service procedures and that such procedures are not subject to legislative controls. *Viculin v Dep't of Civil Service,* 386 Mich 375, 393–394; 192 NW2d 449 (1971), *Welfare Employees Union v Civil Service Comm,* 28 Mich App 343, 352; 184 NW2d 247 (1970), *lv den,* 384 Mich 824 (1971). It is quite another question, however, whether the commission may totally deprive an employee of fundamental First Amendment rights. We conclude that it is beyond the authority of the commission to restrict an employee's political activity when that activity is not engaged in during working hours and does not actually affect job performance.

When First Amendment rights are being restricted, the state must justify the restriction by demonstrating a "compelling state interest". *Advisory Opinion on Constitutionality of 1975 PA 227 (Questions 2–10),* 396 Mich 465, 481; 242 NW2d 3 (1976). All parties concede that the state has a compelling interest in restricting political activities of civil servants while on the job. Plaintiffs readily agree that the commission may validly prohibit political activity during working hours. The Legislature has expressly provided that the allowable political activities must be limited to off-duty hours. MCL 15.404; MSA 4.1702(4).

The commission cannot demonstrate a compelling interest to uphold Rules 7.1 and 7.3 which impose a sweeping prohibition on all political ac-

tivities of civil servants. Public employment cannot be conditioned on relinquishing one's right to participate in the political process. *Abood, supra, Elrod, supra, Kusper, supra.* As the trial judge noted, "It is the purpose of the Commission to keep politics out of the classified state service, not to keep classified employees out of politics." Absent a showing by the commission that an employee's off-duty political activities actually affect his or her job performance, the commission is powerless to abridge an employee's fundamental constitutional rights.

Plaintiff Cusack's situation highlights the need for a case-by-case approach rather than a blanket ban on all political activity. At the time of Mr. Cusack's discharge, he was classified as an "Attendant Nurse 04". It cannot be seriously contended that an attendant nurse can carry out his or her duties in a Republican or Democratic way. If, for example, Mr. Cusack's campaign activities cause him to miss work or neglect his job duties, then the commission would have grounds to discharge him. But so long as plaintiff Cusack is carrying out his assigned duties during working hours, the commission has no interest in prohibiting his off-duty political activity.

We are certainly aware that there are situations, particularly involving high-ranking administrators, where partisan activities could conflict with job performance. However the potential for such conflicts does not justify a blanket ban on the large number of classified employees who do not exercise policy-making or discretionary authority. The commission is clearly empowered to promulgate rules which deal with classified employees whose political activities actually affect job-performance.

Defendant's reliance on *MacLellan v Dep't of Corrections,* 373 Mich 448; 129 NW2d 861 (1964), and *Groehn v Corporation & Securities Comm,* 350 Mich 250; 86 NW2d 291 (1957), is misplaced. Neither case involves an analysis of the commission's power to abridge constitutional rights; *MacLellan* deals with a civil service requirement that an employee obtain prior written permission before engaging in "supplementary employment" and *Groehn* deals with the propriety of a "deputy commissioner in charge of regulation of real-estate practices" engaging in real estate transactions. If anything, *MacLellan* and *Groehn* indicate that whether an employee's off-duty activities interfere with job performance must be evaluated on a case-by-case basis.

Defendant's reliance on *Broadrick v Oklahoma,* 413 US 601; 93 S Ct 2908; 37 L Ed 2d 830 (1973), is also misplaced. In *Broadrick* the Court upheld an Oklahoma statute which prohibited state employees from engaging in political activity. Both *Broadrick* and its companion case, *United States Civil Service Commission v National Association of Letter Carriers, AFL-CIO,* 413 US 548; 93 S Ct 2880; 37 L Ed 2d 796 (1973) (upholding prohibitions on political activities by Federal employees) rely heavily on the balance struck by the legislative and executive branches that the efficiency of the civil service requires limitations on political activities by government employees. In the instant case the Michigan Legislature and executive have concluded the government has no interest in restricting First Amendment rights of civil servants in their off-duty hours. We find it difficult to say there is a compelling state interest in prohibiting the exercise of First Amendment rights when Michigan lawmakers have expressly declined to assert such an interest.

We conclude that insofar as Rules 7.1 and 7.3 impose a blanket ban on all off-duty political activity, they are impermissibly overbroad. While the commission is granted broad powers within its sphere of authority, it does not possess the power to abridge fundamental rights without a showing that an individual's off-duty political activities have an actual effect on job performance.

Because the commission is without authority to impose a blanket ban on off-duty political activity, the Legislature has not encroached on the jurisdiction of the commission by the enactment of 1976 PA 169. We conclude that the protection of civil servants' rights to speech and political association is a proper subject of legislative concern. While the act protects the rights of those who wish to engage in off-duty political activity, it also protects the rights of those who do not. The act does not interfere with the commission's duty to prohibit on-duty political activity and to insure that partisan considerations do not impair the efficiency of the civil service. Further the commission has the power to restrict off-duty political activity which adversely affects the actor's job performance or that of his co-employees or even his superiors. This might be achieved by an employee's aspiring to and running for elective office with intimidating or inimical effect upon some segment of the service directly or indirectly connected. A determination of whether such off-duty activities have an impact on job performance must, however, be made on a case-by-case basis.

We reverse that portion of the lower court ruling which dismissed plaintiff Cusack's complaint. While the trial judge may be correct in his observation that political campaigns require a personal, emotional and physical commitment, the judge

was incorrect in concluding that campaign activities *per se* conflict with job performance. Whether there is an effect on job performance must be evaluated on a case-by-case basis. Because plaintiff Cusack was terminated under an overbroad commission rule and without any showing that his activities affected his job performance,[1] we reverse and remand.

Affirmed in part; reversed in part; remanded for further proceedings.

---

[1] Although plaintiff Cusack was discharged before the effective date of 1976 PA 169, he is entitled to reinstatement of his complaint because he was discharged under impermissibly overbroad commission rules. A determination that the rules are overbroad is not dependent on the validity of 1976 PA 169.