MICHIGAN STATE EMPLOYEES ASSOCIATION
v CIVIL SERVICE COMMISSION

Docket No. 77-5016. Submitted March 6, 1979, at Lansing.—Decided
July 9, 1979. Leave to appeal applied for.

The Department of Natural Resources (DNR), as an agent of the
Michigan Civil Service Commission (MCSC), requires that cer-
tain of its employees must reside at state parks in state-owned
housing as a condition of their employment. Prior to 1972 the
DNR, with approval of MCSC, established dollar amounts for
maintenance deductions on state housing based upon a formula
that considered the size of the house, its condition, its location
and other matters. On June 16, 1972, MCSC enacted new rules
which required state park employees to reside at their work
stations and to pay a rental charge for occupying the manda-
tory state housing in the amount of 65% of the appraised open
market monthly rental value of the unit occupied. Michigan
State Employees Association and certain individual plaintiffs
brought a class action against MCSC challenging the validity of
the new rental policy. Ingham Circuit Court, James T. Kall-
man, J., ruled that MCSC could constitutionally require mem-
bers of the plaintiffs' class to reside in state-owned housing as a
condition of their employment, that MCSC's attempt to impose
the new rental fee system upon members of plaintiffs' class
hired prior to June 16, 1972, violated their contractual rights
and was impermissible, and further ruled that MCSC may
charge employees hired after June 16, 1972, rental for the
mandatory housing under the MCSC's fair market rental value
system adopted by MCSC on June 16, 1972. MCSC appeals.
Plaintiffs cross-appeal contending that MCSC may not require
employees to live in state-owned houses, nor may it unilaterally
set the amount to be charged as rental. *Held:*

   1. The DNR has the authority to establish a requirement

REFERENCES FOR POINTS IN HEADNOTES
[1] 1 Am Jur 2d, Administrative Law §§ 80-82.
[2–6] 1 Am Jur 2d, Administrative Law §§ 80-82.
  48A Am Jur 2d, Labor and Labor Relations §§ 1764-1775.

that individuals employed in certain positions must occupy state-owned housing as a condition of their employment.

2. A person has a constitutional right to live where he chooses, therefore, where a continuing and mandatory residency requirement is imposed as a condition of employment, the restriction on personal liberty must be reasonable.

3. A residency requirement, though in and of itself reasonable, may become unreasonable as applied. The DNR's residency requirement, when coupled with the imposition of rental charges, constitutes unreasonable governmental action. The payments of any sums for occupancy of state-owned housing which is occupied pursuant to a mandatory residency requirement of the DNR would be unjustified. The benefit goes almost entirely in the direction of the DNR, and any incidental value from the state housing to the employees is far outweighed by restrictions upon their personal liberty and the imposition of family hardships.

Reversed.

1. ADMINISTRATIVE LAW — LABOR RELATIONS — STATE PARK EM-
PLOYEES — DUTIES — STATUTES.

The Department of Natural Resources has the authority to appoint all state park employees and to determine their duties (MCL 299.1, 299.2; MSA 13.1, 13.2).

2. ADMINISTRATIVE LAW — LABOR RELATIONS — STATE PARK EM-
PLOYEES — CONDITIONS OF EMPLOYMENT — CIVIL SERVICE COM-
MISSION.

The authority to appoint state park personnel and to regulate working conditions is delegated to and rests with the Department of Natural Resources; its determination affecting conditions of employment are presumed to be valid in the absence of a contrary controlling regulation issued by the Civil Service Commission.

3. ADMINISTRATIVE LAW — LABOR RELATIONS — STATE PARK EM-
PLOYEES — STATE-OWNED HOUSING — RESIDENCE IN PARKS.

The Department of Natural Resources has the authority to require that certain individuals, employed in state parks, must reside in state-owned housing as a condition of their employment.

4. CONSTITUTIONAL LAW — ADMINISTRATIVE LAW — STATE PARK
EMPLOYEES — RESIDENCE IN PARKS — STATE-OWNED HOUSING
— REGULATIONS.

An individual's right to live where he chooses is an integral part

of the right to liberty protected by the 14th Amendment; a classification of state park employees by the Department of Natural Resources and the Civil Service Commission with the requirement that certain employees reside at the parks in state-owned housing must be examined by the traditional due-process rational basis test to determine the reasonableness of the governmental action.

5. ADMINISTRATIVE LAW — CIVIL SERVICE — LABOR RELATIONS —
EXPENDITURES AND SAVINGS — RIGHTS OF EMPLOYEES.

Holding down costs is a legitimate goal to be pursued by governmental entities; however, while government may create policies that seek to avoid unnecessary expenditures, it may not run roughshod over the rights of its employees in attempts to maximize savings.

6. ADMINISTRATIVE LAW — LABOR RELATIONS — STATE PARK EM-
PLOYEES — RESIDENCE IN PARKS — STATE-OWNED HOUSING.

A Department of Natural Resources and Civil Service Commission requirement that certain state park employees reside at a park in state-owned housing, although in and of itself reasonable, may become unreasonable in application.

*Fraser, Trebilcock, Davis & Foster* (by *Michael E. Cavanaugh)*, for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Michael C. Levine,* Assistant Attorney General, for defendant.

Before: M. F. CAVANAGH, P.J., and BASHARA and D. E. HOLBROOK, JR., JJ.

D. E. HOLBROOK, JR., J. This controversy concerns a requirement of the Department of Natural Resources that certain of its employees must reside in state-owned housing as a condition of their employment, and the interrelationship of this DNR requirement with Michigan Civil Service Rules 17.5 and 17.5a. These rules treat the provision of lodging as part of the employee's compensation and provide for the automatic deduction of its

value as an allowance for maintenance. Prior to 1972 the DNR, utilizing a method approved by the Civil Service Commission, established the dollar amounts of the maintenance deductions based upon a formula that took into account such items as the size of the house, its condition, its location and other similar matters. In addition, the employees were required to pay their own utilities. On June 16, 1972, the Civil Service Commission adopted a policy supplement to Rule 17.5a which established a uniform system for determining the amount of maintenance fees charged for the utilization of all state-owned housing based upon the appraised fair market value. This policy was initially to be effective July 1, 1973, but final implementation of the new policy was delayed until September 1, 1974.

Plaintiffs are classified employees of the DNR who are required to live in state-owned housing. They commenced this suit in Ingham County Circuit Court challenging the validity of the new rental policy. On August 30, 1974, the circuit court issued a preliminary injunction to preserve the status quo until a final decision could be rendered on the merits. Both parties filed motions for summary judgment under GCR 1963, 117.2(3), and filed affidavits and exhibits in addition to legal arguments on the issues. On December 1, 1977, the trial court issued its final order and judgment. By this order the trial court held that the Civil Service Commission could constitutionally require members of the plaintiffs' class to reside in state-owned housing as a condition of their employment. However, it determined that any attempts to impose the new rental fee system upon members of the plaintiffs' class who were hired prior to June 16, 1972, violated their contractual rights and was

impermissible. It further found the Civil Service Commission, or the DNR acting as the commission's agent, could from time to time change the formulation for the computation of amounts charged for utilities in the mandatory houses, as long as the amounts charged did not exceed the actual costs of the utilities. In addition, the affected employees must be permitted to perform or have performed repairs which affect the costs of utilities and subtract the costs of such repairs from amounts which otherwise would be paid for the utilities. The Civil Service Commission appeals contending that the differentiation concernng the imposition of the new rental policy based upon contractual rights was not briefed or argued below and thus not proper on a motion for summary judgment. Plaintiffs filed a cross-appeal contending that the Civil Service Commission may not require employees to live in state-owned houses, nor may it unilaterally set the amount to. be charged as rent.

The DNR is the appointing authority for all state park employees. MCL 299.1; MSA 13.1. For approximately the last 30 years the DNR has determined the duties of some of its park employees to include a requirement that they occupy state-owned housing as a mandatory condition of their employment. This requirement has been imposed under the DNR's general authority to determine the duties of its employees. This authority is granted to the DNR by MCL 299.2; MSA 13.2 which incorporates by reference MCL 318.3; MSA 13.1011. Where such authority resides in an appointing authority, its determinations affecting conditions of employment are presumed to be valid in the absence of a contrary controlling regulation issued by the Civil Service Commission. See *Mac-*

*Lellan v Dep't of Corrections,* 373 Mich 448; 129 NW2d 861 (1964). See also, OAG 1969-1970, No 4709, p 169 (September 4, 1970).

The requirement that an individual must reside in state-owned housing in order to perform his job clearly concerns a condition of employment, and the Civil Service Commission is empowered to regulate such a condition of employment. Const 1963, art 11, § 5. However, the Civil Service Commission has enacted no rules concerning the mandatory occupancy of state-owned housing. Prior to June 16, 1972, the Civil Service Commission had no unified policy concerning when the mandatory occupancy of state-owned housing as an employment requirement was to be permitted but allowed each appointing authority to formulate its own policy concerning the propriety of imposing such a mandatory housing requirement. On June 16, 1972, the Civil Service Commission promulgated a policy framework for the exercise of this delegated authority. They stated:

"Mandatory occupancy of state-owned housing as an employment requirement is permissible when it is essential for an employee to be generally available during non-working hours to: 1) protect state property and alternate means are not feasible, or 2) provide information and assistance to the public on sight. Departmental requests for exceptions may be granted by joint approval by the directors of Civil Service and the Bureau of Programs and Budget of the Executive Office." Policy Supplement to Civil Service Commission Rule 17.5a.

On its face this policy statement continues to delegate to the appointing authority the power to require mandatory occupancy of state-owned housing. Accordingly we find that the DNR has the authority to establish a requirement that individuals employed in certain positions must occupy

state-owned housing as a condition of their employment.

Having determined that the DNR has the authority to establish the condition of employment requiring the mandatory occupancy of state-owned houses, we must now determine whether the requirement established is constitutionally permitted. An individual's right to live where he chooses is an integral part of the right to liberty protected by the 14th Amendment, *Allgeyer v Louisiana,* 165 US 578, 589; 17 S Ct 427; 41 L Ed 832 (1897). Plaintiffs contend that the classification created by the joint action of the DNR and the Civil Service Commission limits this right in a fashion that is impermissible. The traditional rational basis test is the test properly applied in cases such as this where a continuing residency requirement is involved. *Detroit Police Officers Ass'n v Detroit,* 385 Mich 519; 190 NW2d 97 (1971), *appeal dismissed for lack of a substantial Federal question,* 405 US 950; 92 S Ct 1173; 31 L Ed 2d 227 (1972). See *Wardwell v Cincinnati Board of Education,* 529 F2d 625, 628, fn 2 (CA 6, 1976). This traditional rational basis test is best stated:

"The governing rule is one of reason: The Equal Protection Clause, like the Due Process Clause, is a guarantee that controls the reasonableness of governmental action. The classification must be a reasonable one, and it must bear a reasonable relation to the object of the legislation. What is reasonable is in each instance a matter of judgment. In the final analysis, it is a value judgment and should be recognized as such." *Manistee Bank & Trust Co v McGowan,* 394 Mich 655, 671; 232 NW2d 636 (1975).

Thus, we must examine the classification established by the DNR and the Civil Service Commission to determine its reasonableness.

The classification system challenged by plaintiffs consists of two elements. The DNR established the first element by requiring that certain of its employees occupy state-owned housing located in the park where the individual is employed. The Civil Service Commission established the second element by interpreting their Rule 17.5a as requiring a rental charge to be imposed upon persons occupying mandatory housing in the amount of 65% of the appraised open market monthly rental value of the unit occupied. These two elements interlock to such an extent that the reasonableness of the DNR's mandatory housing policy must be examined by taking into account the impact of the Civil Service Commission's rules.

The DNR's mandatory housing policy requires that park managers reside on their work station, the park to which they are assigned. This requirement falls within the general category of the continued residence within a specified political boundary type of residency requirement that has been approved in other litigation. *McCarthy v Philadelphia Civil Service Comm,* 424 US 645; 96 S Ct 1154; 47 L Ed 2d 366 (1976), *Williams v Civil Service Comm of Detroit,* 383 Mich 507; 176 NW2d 593 (1970), *Park v Lansing Board of Education,* 62 Mich App 397; 233 NW2d 592 (1975). See *Detroit Police Officers Ass'n v Detroit, supra.* See also, *Dunn v Blumstein,* 405 US 330, 342, fn 13; 92 S Ct 995; 31 L Ed 2d 274 (1972). The requirement in this instance is however much more restrictive than any other requirements upheld in previous litigation. The individuals concerned are restricted to residing in a particular house, rather than within a particular city limit. This greater restriction does not in and of itself make the requirement unreasonable, but does require forceful reasons to justify its imposition.

Mr. M. E. Southworth, Chief of the Personnel Division of the DNR, stated in an affidavit submitted in this case that:

"The purpose of requiring the park managers and certain other employees to reside in housing in DNR parks is to provide protection of public property in the parks where the facilities and equipment are valued at hundreds of millions of dollars and, just as importantly, to serve the public during non-working hours. If the employees were not required to live in the parks, it would be necessary to hire additional park rangers to man the parks around the clock, which we conservatively estimate would cost approximately three million dollars per year."

Mr. Southworth indicates that the sole justification for the mandatory residency requirement is an economic savings to the state. The holding down of costs is a legitimate goal to be pursued by governmental entities. *Moore v East Cleveland,* 431 US 494, 500; 97 S Ct 1932; 52 L Ed 2d 531 (1977), *Williams v Civil Service Comm of Detroit, supra,* at 514-515. While government may create policies that seek to avoid unnecessary expenditures, it may not run roughshod over the rights of its employees in attempts to maximize savings. In this instance, by requiring the park managers to reside on their parks, the necessity of hiring additional security and public personnel is avoided. The record reflects that as a result of this policy the individuals concerned, as well as their families, are subjected at times to a degree of unpleasantness and living conditions that they would not voluntarily choose for themselves. However, we do not consider that the record contains sufficient evidence to have permitted the trial court or to permit this Court to determine whether the mandatory housing requirement of the DNR, standing

alone, is unreasonable. We therefore decline to determine that issue, but rather assume its reasonableness for the purpose of further discussion.

A residency requirement, though in and of itself reasonable, may become unreasonable as applied. *State, County and Municipal Employees Local 339 v Highland Park,* 363 Mich 79; 108 NW2d 898 (1961). In this instance Civil Service Commission Rules 17.5, 17.5a, and 17.5b are applicable to individuals who reside in government-owned quarters. These rules state:

"17.5 Maintenance Allowance.—When allowances are made for maintenance or other purposes, they shall be considered as part compensation, unless specifically excepted by the commission.

"17.5a Allowance for maintenance such as meals, quarters, domestic or other personal services, medical care or treatment, laundry or other services or provisions, shall be deducted from the salary to the extent of its value as recommended by the appointing authority and the budget director with the approval of the State Personnel Director. The total amount paid to an employee, plus the value for any maintenance shall not be less than the minimum rate nor greater than the maximum rate for the class as provided in the compensation plan.

"17.5b When the maintenance is furnished it shall be optional with the employee to receive such maintenance except where it is necessary for the proper performance of the duties of the position. No employee shall be charged for maintenance not received."

The net result of these rules is to require that the value of the housing provided an individual is to be considered as part of his total compensation, and that this amount must be subtracted from his stated salary to determine the amount of monetary compensation he is entitled to receive.

This system of deducting the value of housing

received from the gross salary of park managers has always been enforced. Prior to 1972 the DNR determined this value based upon a point system. This point system is modified under the new Civil Service Commission policy and is the center of this controversy. It states:

"Rental Rate Determination:

"There shall be two structures utilized for payment, to the state, for tenancy in state-owned housing (rooms, apartments, houses). 1. The rental charge for housing that is occupied as a mandatory requirement of employment shall be 65% of the appraised open market value of the housing unit. Further reductions of up to 25% of the appraised value may be made for harassment of the individual or his family during non-working hours and up to 10% of the appraised value for an individual who is required to live in housing which is unsuitable for his family's space needs. Reduction for harassment and family space needs must be recommended by the departments affected and approved by the Department of Civil Service. No mandatory employee housing unit will increase more than $30 per month in rental charges each year above the current authorized rental rate until the maximum chargeable rate is achieved.

"2. The rental charge for all other housing shall be 100% of appraised open market value.

"Appraisals of state-owned housing shall be the responsibility of the Department of Administration. Appraisal review shall occur no less than biennially, taking into consideration any changes in open market housing values and the condition of individual state-owned housing units. Where it is not feasible for tenants to pay directly for water, sewage, electricity and fuel, the estimated costs of such shall be reflected in the rent appraisal. A master list of all housing units, including appraised rental values and locations shall be provided to the Department of Civil Service, Bureau of Programs and Budget of the Executive Office, and Office of the Auditor General." Policy Supplement to Civil Service Commission Rule 17.5a.

We note that both the old DNR system and the new Civil Service Commission system are merely different methods of calculating the amount of rental charge to be imposed upon the residents of state-owned housing.

In this instance it is difficult to justify the imposition of any rental amount upon these plaintiffs. The benefit of the residency requirement goes almost entirely in the direction of the DNR. This requirement enables the DNR to receive approximately three million dollars in services for which no compensation need be paid. It is true that the individual concerned does receive some incidental value from the receipt of housing, but this value is far outweighed by the restriction upon his personal liberty and the hardship placed upon his family. Accordingly, we find that the mandatory residency requirement of the DNR, when coupled with the imposition of rental charges, constitutes unreasonable governmental action and is impermissible. The DNR is not prohibited from maintaining a mandatory residency requirement for these employees, but the Civil Service Commission in its position as ultimate regulator of all conditions of employment for the classified civil service may not require the payments of any sums for occupancy of state-owned housing which is occupied pursuant to a mandatory requirement of the DNR.

Reversed. No costs, a public question being involved.