NUMMER v DEPARTMENT OF TREASURY

Docket No. 97343. Argued November 2, 1994 (Calendar No. 16).
     Decided May 2, 1995. Rehearing denied 449 Mich 1204.

David Nummer filed a grievance with the Department of Civil
     Service against the Department of Treasury, alleging that it
     breached a contractual promise that he would remain employed
     within its Tax Fraud Division, and that his transfer to the
     Discovery Division constituted discrimination on the basis of
     race and gender. A hearing officer denied recovery. The Em-
     ployment Relations Board denied leave to appeal. The Civil
     Service Commission subsequently approved the board's deci-
     sion. Thereafter, the plaintiff appealed the final determination
     of the commission in the Ingham Circuit Court. The court,
     Michael G. Harrison, J., affirmed. Before the court issued its
     opinion, the plaintiff brought a separate action in the Ingham
     Circuit Court against the Treasury Department, alleging
     breach of contract and race and sex discrimination. The court,
     James R. Giddings, J., found on the basis of the commission's
     decision that the plaintiff was collaterally estopped from bring-
     ing either issue and summarily dismissed the complaint. The
     Court of Appeals, WAHLS, P.J., and SHEPHERD and CAVANAGH,
     JJ., reversed in part, holding that collateral estoppel could not
     be applied in civil rights cases (Docket No. 139570). The defen-
     dant appeals.

In an opinion by Justice RILEY, joined by Chief Justice
BRICKLEY, and Justices BOYLE and WEAVER, the Supreme Court
held:

The plaintiff is barred from relitigating his claim by the
doctrine of collateral estoppel.

1. The preclusion doctrines serve an important function in
resolving disputes by imposing a state of finality to litigation
where the same parties have previously had a full and fair
opportunity to adjudicate their claims. By putting an end to
litigation, the preclusion doctrines eliminate costly repetition,
conserve judicial resources, and ease fears of prolonged litiga-
tion. Whether the determination is made by an agency or court
is inapposite; the interest in avoiding costly and repetitive
litigation as well as preserving judicial resources remains.

2. The doctrine of collateral estoppel, at issue in this case,

applies where a question of fact essential to the judgment actually has been litigated and determined by a valid and final judgment, the parties have had a full opportunity to litigate the issue, and there is mutuality of estoppel. Because the defendant is seeking to preclude relitigation on the basis of an administrative decision, three additional requirements must be satisfied: the administrative determination must have been adjudicatory in nature, there must be a right to appeal, and the Legislature must have intended to make the decision final absent an appeal. The point of contention centers on the third element.

3. MCL 37.2606(1); MSA 3.548(606)(1) provides that the standard of review on appeal from the Civil Rights Commission is review de novo. Even assuming that a Civil Service Commission determination should be akin to a Civil Rights Commission determination, a plaintiff whose claim is fully adjudicated by a formal hearing is only afforded the opportunity to appeal the decision and receive review de novo, but is not afforded the right to file a new complaint raising the same claim. There is no legislative intent for the multiplicity of litigation encountered in this case.

4. Preclusion doctrines are judicial creations, developed and extended from the common law. Accordingly, the Legislature is free to modify its strict application in a given statutory scheme. However, the Civil Rights Act is devoid of any statement that traditional preclusion rules do not apply to it, and no such intent can be inferred from the statutory scheme. The plain language simply contemplates an appeal from the Civil Rights Commission, but does not contemplate a new, original action in circuit court, i.e., it provides guidance on direct appeal in circuit court and says nothing about filing a new, original action in circuit court after receiving full review in an administrative agency, with a subsequent appeal and review in circuit court. The same should be true for claims first beginning in the Civil Service Commission.

5. The Civil Rights Commission does not have exclusive jurisdiction over discrimination claims. Rather, the Civil Rights Commission, the Civil Service Commission, and the circuit court have concurrent jurisdiction. In this case, the plaintiff elected to adjudicate his claim to conclusion in the Civil Service Commission and lost. Once a tribunal of concurrent jurisdiction has rendered a decision on the merits, § 606 mandates that any subsequent relief is to be in the form of appellate review. Reading § 803 in light of § 606, it is clear that the Legislature intended to make the Civil Rights Commission findings final in

the absence of an appeal and, accordingly, also must have intended to make Civil Service Commission determinations final in the absence of an appeal. Regardless of whether an appeal is taken, the Legislature has provided only one remedy from an adverse determination: direct appeal in the circuit court. An appeal by its very nature contemplates the possibility of reversal, but it certainly does not contemplate a new, original action.

Reversed.

Justice MALLETT, joined by Justice CAVANAGH, dissenting, stated that the doctrine of collateral estoppel does not apply to Civil Service Commission decisions because the Legislature intended the Civil Rights Act to abrogate the common-law rules of preclusion. A final determination by the Civil Service Commission does not preclude an employee from relitigating discrimination issues in the circuit court.

Generally, collateral estoppel applies to an administrative agency's final decision; however, each agency must be assessed separately. A decision will be given preclusive effect where it is adjudicatory in nature, there is a method of appeal, and it is clear the Legislature intended it to be final in the absence of an appeal. Because the rules of preclusion are a judicial creation, the presumption of preclusion will not apply where a statutory purpose to the contrary is evident.

The standard of review set forth in the Civil Rights Act indicates that the Legislature intended plaintiffs to have an independent review of civil rights claims in a judicial forum. Allowing a judicial proceeding when plaintiffs pursue an administrative remedy in the Civil Rights Commission, but denying similar treatment when plaintiffs seek adjudication by the Civil Service Commission violates the goals of the Civil Rights Act. The Civil Rights Commission does not have exclusive jurisdiction over state employees' discrimination claims; the Civil Service Commission, the Civil Rights Commission, and the circuit court have concurrent jurisdiction when a state employee asserts a civil rights violation. Concurrent jurisdiction does not undermine the legislative goal of providing an independent determination in a judicial forum.

Treating the Civil Rights Commission and the Civil Service Commission differently is unsupported by the language or the intent of the Civil Rights Act. It would be anomalous to give greater deference to the determinations of the Civil Service Commission with regard to discrimination issues, an agency that only addresses discrimination as one facet of its jurisdiction, than to the Civil Rights Commission, the agency expressly

created to remedy discriminatory treatment. Because a determination by the primary agency vested with eliminating discrimination does not preclude an independent determination in a judicial forum, neither should the determination of the Civil Service Commission. Denying preclusive effect to the Civil Service Commission discrimination determination recognizes the unique nature of a discrimination claim and fulfills the intent of the Legislature to provide an independent determination in a judicial forum.

Justice LEVIN, writing separately, stated that factors that distinguish this case from other cases in which relitigation of a factual issue might be sought justify recognizing an exception to the doctrine of collateral estoppel permitting relitigation of the issue of sex and race discrimination.

In a circuit court civil rights action, unlike a Civil Service Commission proceeding, the parties have a right to a determination of the factual issues by a jury (or judge). The administrative hearing and decision-making process, while adjudicatory, is informal and expedited, in contrast with the formal and deliberative proceedings in a circuit court trial. A new determination by a circuit court jury of the issue of sex and race discrimination, thus, as set forth in 1 Restatement Judgments, 2d, § 28, would be warranted by differences in the quality or extensiveness of the procedures followed in the circuit court as compared to those followed in a Civil Service Commission administrative proceeding.

A state civil servant in the classified service, in a circuit court action asserting that his civil rights have been violated, cannot join claims seeking redress for violation of his civil service rights. Precluding a circuit court civil rights action following a Civil Service Commission hearing on a civil rights grievance generally will result in state civil servants splitting their claims of civil rights and noncivil rights grievances, thus assuring the multiplicity of litigation that the doctrine of collateral estoppel seeks to discourage. In some cases, the factual predicate of a state civil servant's noncivil rights grievance may so relate to the factual predicate of a civil rights grievance that a Civil Service Commission hearing officer's findings regarding the noncivil rights grievance may decide factual issues central to a circuit court civil rights action. A well-informed and advised civil servant will be forced to choose either to forgo, by not grieving, the noncivil rights claims, in order to protect the civil rights claim against an adverse finding by a Civil Service Commission hearing officer regarding an issue central to a circuit court civil rights action, or run the

risk of such an adverse finding by filing a grievance regarding the noncivil rights claims.

Preclusion is a judicially created doctrine that serves to eliminate redundant litigation. It should not be extended to a case in which the litigation is not redundant. A state civil servant who has both a civil rights grievance and a noncivil rights grievance should be able to seek a Civil Service Commission hearing of the noncivil rights grievance without running the risk that the decision of that claim will preclude a circuit court civil rights claim even if the employee does not file a grievance regarding the civil service discrimination claim.

The majority should limit its holding to the facts of this case where grievances involving both a civil rights and a noncivil rights claim were filed. It should add that where a grievance does not involve a civil service discrimination claim, a finding regarding another claim will not preclude a civil rights action. To fail to do so may mean that a person employed in the state classified service will be constrained from filing legitimate nondiscrimination grievances, lest an adverse determination foreclose a civil rights action. Neither judicial economy nor the doctrine of collateral estoppel inexorably requires the conclusion that the needs of judicial economy outweigh the needs and rights of persons in the state classified service to exercise their civil service grievance hearing rights without potentially sacrificing their rights and remedies under the Civil Rights Act.

It is a feature of civil rights litigation that a person claiming a violation of civil rights has a multiplicity of remedies. Neither the framers of the constitution nor the Legislature intended that an employee in the state civil service would be required to elect which right to assert and be constrained to forgo one right to protect another. The policies underlying the doctrines of collateral estoppel and preclusion do not require that those doctrines be applied so rigidly as to force such an election. Rather, they oblige protection of both a state employee's civil service grievance rights and the right to bring a civil rights action in the circuit court.

Locating, as does the dissent, the source of the right to an independent determination of a civil rights claim in § 606, overlooks that § 606 concerns only an appeal from the Civil Rights Commission. The source of the right to maintain a separate action in the circuit court is not § 606 in article 6, but article 8 of the Civil Rights Act. Such an action does not seek appellate review of a decision of the Civil Rights Commission by the circuit court. Nor does it seek appellate review by the circuit court of a decision of the Civil Service Commission. It is

a separate, original circuit court action, triable by a jury, commenced pursuant to article 8, and cannot properly be analogized to an article 6 action seeking appellate review by the circuit court of a decision of the Civil Rights Commission. The record to be made in an action triable before a jury is not limited, and cannot be limited, by the record made before another tribunal such as the Civil Rights Commission.

200 Mich App 695; 504 NW2d 724 (1993) reversed.

*Green & Green* (by *Christine A. Green*) for the plaintiff.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Gary P. Gordon* and *John F. Szczubelek*, Assistant Attorneys General, for the defendant.

RILEY, J. In this case, we decide whether a formal and final decision by the Civil Service Commission rejecting a discrimination claim precludes relitigation of that issue in a subsequently filed action in circuit court. We hold that collateral estoppel bars relitigation of this claim. Accordingly, we reverse the decision of the Court of Appeals.

I

Plaintiff David Nummer is a white male who was hired as an auditor by the Treasury Department in 1970 and transferred to the intelligence unit of the Tax Fraud Division in 1978. Plaintiff remained in the Tax Fraud Division until 1987, when all Tax Fraud Division auditors were transferred to the newly formed Discovery Division within the Department of Treasury. Plaintiff objected to the transfer and filed a grievance with the Department of Civil Service. His grievance alleged two theories of recovery: first, that the Department of Treasury breached a contractual

promise that he would remain within the Tax Fraud Division and, second, that the transfer constituted discrimination on the basis of race and gender in violation of the civil service provisions set forth in art 11, § 5, of the Michigan Constitution.[1]

On June 17, 1988, the civil service hearing officer denied recovery on both theories. Plaintiff appealed the decision to the Employment Relations Board, which denied leave.[2] The Civil Service Commission subsequently reviewed and approved the Employment Relations Board's decision. Plaintiff then appealed the final determination of the commission to the circuit court, which affirmed the commission's determination.

While plaintiff's appeal was pending in circuit court, and before that court issued its opinion affirming the decision of the commission, plaintiff filed a new action in circuit court. The second case, also based on plaintiff's transfer to the Discovery Division, alleged breach of contract and race and sex discrimination in violation of the Civil Rights Act. MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.*

[1] Const 1963, art 11, § 5, states that the Civil Service Commission shall have the power to "regulate all conditions of employment in the classified service," and that "[n]o appointments, promotions, demotions or removals in the classified service shall be made for religious, racial or partisan considerations." Pursuant to Const 1963, art 11, § 5, the Civil Service Commission has the authority to promulgate rules to effectuate the mandates of § 5. In addressing the plaintiff's discrimination allegation, the commission assessed whether the Department of Treasury violated Civil Service Commission Rule 1-2.1, which in pertinent part states:

> No person shall be discriminated against in seeking employment, in being appointed or promoted, or in any condition of employment, in the classified service, or any separation therefrom, because of race, color, religion, national origin, ancestry, handicap, partisan considerations, age or sex.

[2] The board "conclude[d] that no meritorious basis for an appeal of the Grievance Hearing Officer's Decision has been shown by Appellant."

Defendant responded to the second action by alleging that the commission's determination that the transfer did not breach any contractual obligation and that the transfer was not for discriminatory reasons collaterally estopped redetermination of these issues in the circuit court. The circuit court agreed that plaintiff was collaterally estopped from bringing either the contract issue or the discrimination issue and dismissed the complaint.

Plaintiff appealed the dismissal in the Court of Appeals. The Court held that the contract issue was collaterally estopped,[3] but that collateral estoppel did not apply to the civil rights claim. The Court of Appeals refused to apply collateral estoppel to the discrimination issue because it believed that the Legislature, in the civil rights arena, "chose to set aside the principles of collateral estoppel in civil rights cases and to countenance a multiplicity of litigation." 200 Mich App 695, 700; 504 NW2d 724 (1993). Defendant appealed, and we granted leave.[4]

II

The preclusion doctrines serve an important function in resolving disputes by imposing a state of finality to litigation where the same parties have previously had a full and fair opportunity to adjudicate their claims. *Storey v Meijer, Inc,* 431 Mich 368, 372; 429 NW2d 169 (1988). By putting an end to litigation, the preclusion doctrines eliminate costly repetition, conserve judicial resources, and ease fears of prolonged litigation. Whether the determination is made by an agency or court is

[3] The contract issue is not before us.

[4] 445 Mich 934 (1994).

inapposite; the interest in avoiding costly and repetitive litigation, as well as preserving judicial resources, still remains. *Univ of Tennessee v Elliott,* 478 US 788, 798; 106 S Ct 3220; 92 L Ed 2d 635 (1986).

At issue in this case is the doctrine of collateral estoppel. Generally, "[f]or collateral estoppel to apply, a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment. In addition, the same parties must have had a full opportunity to litigate the issue, and there must be mutuality of estoppel." *Storey, supra* at 373, n 3.

However, because defendant is seeking to preclude relitigation on the basis of an administrative decision, three additional requirements must be satisfied. The administrative determination must have been adjudicatory in nature and provide a right to appeal, and the Legislature must have intended to make the decision final absent an appeal. *Senior Accountants, Analysts & Appraisers Ass'n v Detroit,* 399 Mich 449, 457-458; 249 NW2d 121 (1976); *Roman Cleanser Co v Murphy,* 386 Mich 698, 703-704; 194 NW2d 704 (1972). See also *Storey, supra* at 373.

It is not seriously contested that the general requirements of collateral estoppel are met and that at least the first two requirements for administrative estoppel are satisfied. In the Civil Service Commission, plaintiff alleged that the Department of Treasury violated Civil Service Commission Rule 1-2.1.[5] This claim between the same parties involved a similar factual issue as that which was actually litigated and decided in the Civil Service Commission. Moreover, plaintiff was represented by counsel before the agency; had the opportunity to, and did in fact, call witnesses; and had a full

[5] See n 1.

hearing on the merits of his claim.[6] In addition, he appealed this decision to the Employment Relations Board and then to the Civil Service Commission.

This proceeding, therefore, clearly was not summary in nature. See *Storey, supra.* Furthermore, it is disingenuous to argue that plaintiff did not have a full opportunity to present his claim or that the adjudicatory nature of the proceeding is not sufficiently akin to a judicial proceeding.[7] Indeed, neither party suggests that the proofs required in the agency determination differ from a Civil Rights Act claim in circuit court.

In terms of the right to appeal, plaintiff certainly was afforded numerous opportunities. In addition to the two intra-agency appeals, he obtained review in the circuit court. Thus, plaintiff had the opportunity to appeal, did in fact appeal, and, hence, satisfies the second part of administrative estoppel.

The point of contention in this case centers on the third element of administrative estoppel, i.e., that the Legislature intended the decision to be final absent an appeal. Plaintiff and Justice MALLETT rely on MCL 37.2606(1); MSA 3.548(606)(1), which provides the standard of review on appeal from the Civil *Rights* Commission: "An appeal before the circuit court shall be reviewed de novo." Even assuming that a Civil Service Commission determination should be akin to a Civil Rights Commission determination, a plaintiff

[6] Plaintiff does not seriously contend that he did not have a full and fair opportunity to develop and present his case before the Civil Service Commission.

[7] We wish to make clear that the issue decided today only would affect agency decisions by formal hearing. See *Strachan v Mutual Aid & Neighborhood Club, Inc,* 407 Mich 928 (1979), in which we held that a Civil Rights Commission decision to dismiss for "insufficient evidence was not adjudicatory in nature and thus does not bar subsequent proceedings in circuit court."

whose claim is fully adjudicated by a formal hearing is only afforded the opportunity to *appeal* the decision and receive a de novo review, but is not afforded the right to file a complaint anew raising the same claim. In this case, plaintiff appealed to the circuit court and received a review under a competent, material, and substantial evidence standard.[8] *Viculin v Dep't of Civil Service,* 386 Mich 375, 392; 192 NW2d 449 (1971). While this appeal was pending, plaintiff decided to file a new, original action in the same court. This new action was assigned to a different judge who had to decide issues on the basis of the same factual setting. There is absolutely no legislative intent for this multiplicity of litigation.

III

Preclusion doctrines are judicial creations, developed and extended from the common law. Accordingly, the Legislature is free to modify its strict application in any given statutory scheme. 2 Davis & Pierce, Administrative Law (3d ed), § 13.3, p 256. However, the Civil Rights Act is devoid of any statement that traditional preclusion rules do not apply to this statutory scheme. Hence, the difficulty lies in determining whether an intent can be *inferred* from the statutory scheme. Davis & Pierce, *supra.* In doing so, it must be remembered that the Legislature is deemed to legislate with an understanding of common-law adjudicatory principles. *Garwols v Bankers Trust Co,* 251 Mich 420, 424-425; 232 NW 239 (1930); *Astoria*

---

[8] This standard of review is not "on the merits," but it is the one provided by the people of the State of Michigan, and one that the Legislature has not seen fit to change. In any event, plaintiff does not contend that this standard of review was inappropriate and that a de novo review should be imposed instead. Justice LEVIN's opinion fails to acknowledge this part of the record. *Post* at 581-582.

*Federal S & L Ass'n v Solimino,* 501 US 104, 107-108; 111 S Ct 2166; 115 L Ed 2d 96 (1991).

A

To date, the closest this Court has come to making such a determination was in *Storey, supra.* We considered whether a determination by the Michigan Employment Security Commission precluded relitigation of the same issue regarding dismissal in a subsequent civil suit for wrongful discharge and breach of employment contract. In terms of legislative intent to modify traditional preclusion principles, we found MCL 421.11(b)(1); MSA 17.511(b)(1) controlling. It provides:

> Except as provided in this act, such information and determinations shall not be used in any action or proceeding before any court or administrative tribunal unless the commission is a party to or a complainant in the action or proceeding, or unless used for the prosecution of fraud, civil proceeding, or other legal proceeding pursuant to subdivision (2).

Accordingly, this Court held "that § 11(b)(1) clearly and unambiguously prohibits the use of MESC information and determinations in subsequent civil proceedings unless the MESC is a party or complainant in the action." *Storey, supra* at 376.[9]

Federal cases have reached similar conclusions, but under slightly less explicit direction from Congress. For example, in *Solimino, supra,* the Court

[9] The Court also found support in the inferred legislative policy that the unemployment system was designed to render quick results that presumably create a disincentive to fully litigate the issue. In other words, imposing preclusive effect would frustrate the legislative policy by "delaying the determination of benefit rights and burdening the unemployment compensation system." *Id.* at 378.

held that an age discrimination claim[10] is not
precluded by a judicially unreviewed finding by a
state administrative agency. The Court refused to
rely on any negative intent, i.e., that Congress did
not make a clear statement abrogating common-
law preclusion and thus preclusion applied, but
instead considered whether there was any intent
to be inferred from the statutory scheme.[11] Looking
to the filing requirements of the statute, which
required exhaustion of remedies with state author-
ities before filing in federal court, the Court held
that there was congressional intent to abrogate
preclusion principles. 501 US 111. The Court rea-
soned that the filing requirements "plainly assume
the possibility of federal consideration after state
agencies have finished theirs." *Id.*

---

[10] 29 USC 621 *et seq.*

[11] In other words, the dispositive question is "whether a common-
law rule of preclusion would be consistent with Congress' intent in
enacting [the statute]." *Elliott, supra* at 796. In *Elliott,* the Court
found legislative intent indicating that preclusion should not apply in
a racial discrimination claim under title VII. Initially, the Court
reviewed 42 USC 2000e-5(b), which provided that the Equal Employ-
ment Opportunity Commission "must give 'substantial weight to final
findings and orders made by State or local authorities in proceedings
commenced under State or local [employment discrimination] law.'"
*Id.* at 795. The Court explained that "it would make little sense for
Congress to write such a provision if state agency findings were
entitled to preclusive effect in Title VII actions in federal court." *Id.*
The Court then turned to its decision in *Chandler v Roudebush,* 425
US 840, 848; 96 S Ct 1949; 48 L Ed 2d 416 (1976), where the Court
explained:

"The legislative history of the 1972 amendments reinforces
the plain meaning of the statute and confirms that Congress
intended to accord federal employees the same right to a trial
*de novo* [following administrative proceedings] as is enjoyed by
private-sector employees and employees of state governments
and political subdivisions under the amended Civil Rights Act
of 1964." [*Elliott, supra* at 795-796.]

Interestingly, the Age Act at issue in *Solimino* did not contain that
provision. The *Solimino* Court explained this omission was immaterial
because the "substantial weight" provision, like the filing require-
ments, both indicate and support the finding that preclusion should
not apply. 501 US 112.

B

Reviewing the Civil Rights Act, there is nothing remotely similar to the provisions found dispositive of legislative intent in either *Storey* or *Solimino.* Section 606 merely provides: "An appeal before the circuit court shall be reviewed de novo." Clearly, the express intent presented by the provision in *Storey* is far from the instant provision providing that an *appeal* from the Civil *Rights* Commission "shall be reviewed de novo." The latter says nothing about use in later proceedings. The plain language simply contemplates an *appeal* from the Civil Rights Commission, but does not, by any stretch of the imagination, contemplate a new, original action in circuit court.

Moreover, fact-specific holdings in federal decisions like *Solimino* are inapposite because the federal system requires exhaustion of administrative remedies before review in the courts. *Kremer v Chemical Construction Corp,* 456 US 461, 469; 102 S Ct 1883; 72 L Ed 2d 262 (1982). Where exhaustion is required, granting preclusive effect to an agency decision would undermine the role of the courts in the enforcement of laws prohibiting discriminatory treatment. Michigan law, on the other hand, clearly does not require exhaustion of administrative remedies before filing in circuit court.[12] See, e.g., *Pompey v General Motors Corp,*

---

[12] In defining the scope of powers entrusted to the Civil Rights Commission, the people provided:

   Nothing contained in this section shall be construed to diminish the right of any party to direct and immediate legal or equitable remedies in the courts of this state. [Const 1963, art 5, § 29.]

385 Mich 537, 558-560; 189 NW2d 243 (1971);[13]
*Marsh v Dep't of Civil Service,* 142 Mich App 557,
562-563; 370 NW2d 613 (1985).

The statutory provision at issue in *Solimino*
confirms this difference. It mandates that a plain-
tiff first proceed in the state agency before filing in
the courts. Accordingly, it creates a reasonable
inference that preclusion rules should not apply.
The same cannot be said with respect to the
Michigan statute, however. It merely provides that
*appeals* from the Civil Rights Commission should
be *reviewed* de novo. In other words, it provides
guidance on *direct* appeal in circuit court and says
nothing about filing a new, original action in
circuit court after receiving full review in an
administrative agency, with a subsequent appeal
and review in circuit court.

The dissents would break new ground in Michi-
gan law by countenancing a greater multiplicity of
litigation[14] than was ever arguably intended by the

[13] Reviewing the constitutional convention records, *id.* at 559, n 19,
it becomes abundantly clear that the people intended to give a
plaintiff the right to proceed directly to court without exhausting
administrative remedies. However, neither the convention notes nor
this Court's decision in *Pompey* give any indication that the preclu-
sion doctrines would not apply. Hence, unlike the federal system
where exhaustion rules apply, there is no intent, express or implied,
that preclusion should not be employed.

[14] Justice LEVIN's opinion contends that granting preclusive effect to
a Civil Service Commission decision might increase litigation because
plaintiffs are likely to split their claims, whereas denying preclusive
effect "might, in particular cases, actually conserve judicial re-
sources." *Post* at 575 and 579. The opinion, however, fails to grasp
the important concept of mutuality of estoppel. Estoppel must work
both ways. See *Howell v Vito's Trucking & Excavating Co,* 386 Mich
37, 43; 191 NW2d 313 (1971). Our position will conserve resources by
permitting a plaintiff to offensively use a favorable Civil Service
Commission decision in circuit court to obtain damages or remedies
not available before the commission. Justice LEVIN's view would
require a plaintiff receiving a favorable ruling in the Civil Service
Commission to relitigate the entire claim before reaching a damages
or other remedy determination. Hence, our holding reduces the
multiplicity of litigation, and Justice LEVIN's opinion actually serves
to increase it.

Legislature.[15] However, the statutes at issue in both *Storey* and *Solimino* do not support such an inferred intent analysis as is employed by Justice MALLETT. Even if we were considering an action first begun in the Civil Rights Commission, it would be unreasonable to infer such intent from a statutory provision stating the standard of review on *appeal.* Indeed, without question a plaintiff beginning in the Civil Rights Commission and *appealing* to the circuit court, where he receives an adverse decision, would *not* be entitled to file a new, original action in circuit court. Preclusion would certainly bar the action because there would be no legislative intent for this multiplicity of litigation and waste of judicial resources. The same should be true for claims beginning in the Civil Service Commission.[16]

C

The dissents cite briefly MCL 37.2803; MSA 3.548(803) and Const 1963, art 5, § 29, for support in finding that preclusion does not apply. Both the statute and the constitutional provisions employ the same language which, in effect, states that nothing in the constitution or the Civil Rights Act "shall be construed to diminish the right of any

[15] The dissents would also break new ground on an issue not raised in this Court by overruling *Walker v Wolverine Fabricating & Mfg Co, Inc,* 425 Mich 586; 391 NW2d 296 (1986), and holding that a proceeding de novo either on direct appeal from the agency or in a new, original action is not limited to the record made before the agency. We elect not to express an opinion on an issue not before this Court.

[16] Justice LEVIN's opinion argues that we should limit our "holding to the facts of this case where grievances involving both a civil rights and a noncivil rights claim were filed." *Post* at 576. Because this is the factual context in which this case is presented, we intimate only so far. We do not decide whether collateral estoppel could be applied under Justice LEVIN's hypothetical example. We save for another day that discussion.

party to direct and immediate legal or equitable remedies in the courts of this state."

What the dissents fail to do is provide an analysis of the meaning of this clause. However, in *Pompey, supra,* this Court engaged in extensive analysis of its meaning and concluded that the clear intent of this provision was to permit claimants to seek relief in the courts without first exhausting administrative remedies. *Id.* at 558-560, n 19.[17] In other words, the Civil Rights Commission does not have exclusive jurisdiction over discrimination claims, but instead has concurrent jurisdiction with the circuit courts. See also *Marsh, supra.*

Assuming this provision applies to the Civil Service Commission, imposing preclusion would not offend this clause or even implicate its prohibitions in this case.[18] The Civil Rights Commission, the Civil Service Commission, and the circuit court still have concurrent jurisdiction over discrimination claims. *Marsh, supra.* Plaintiff elected to adju-

---

[17] This amendment has been offered . . . to give a basic right to any citizen to go to the courts of this state to try his own case. Any commission established could so set up their requirements that if they were drafted too loosely without basic thought behind them, I am afraid, the state would force an individual to go through such a commission before his rights could be firmly established. They might exhaust the individual trying to secure his rights by saying that he must first exhaust their legal remedy. I think it is most vital that any person who feels that he has been wronged and who feels he has a cause of action be entitled to have his case tried in a court of this state immediately if he is ready to go, that we would always have this basic right of trial preserved to every citizen. [2 Official Record, Constitutional Convention 1961, p 1946.]

[18] Interestingly, Justice LEVIN relies on this Civil *Rights* Commission provision to support the proposition that a person receiving an adverse Civil *Service* Commission determination has a right to a new, jury determination of the issue in circuit court. *Post* at 578. Not only does the constitution not provide a similar provision for Civil *Service* Commission decisions, but the clear import of this section is only to allow for concurrent jurisdiction. Moreover, Justice LEVIN's position serves to overrule *Walker,* n 15 *supra,* an issue not before this Court, with no explanation or analysis.

dicate his claim to conclusion in the Civil Service Commission and lost. Once a tribunal of concurrent jurisdiction has rendered a decision on the merits, § 606 mandates that any subsequent relief would be in the form of appellate review.[19]

Hence, § 606, not § 803, answers the question whether "it is clear that the Legislature intended to make the determination final in the absence of an appeal." *Storey, supra* at 373. Reading § 803 in light of § 606, it is clear that the Legislature intended to make the Civil Rights Commission findings final in the absence of an appeal and, accordingly, also must have intended to make Civil Service Commission determinations final in the absence of an appeal. Regardless of whether an appeal is taken, the Legislature has provided only one remedy from an adverse determination, i.e., direct appeal in the circuit court. An appeal by its very nature contemplates the possibility of reversal, but it certainly does not contemplate a new, original action. If the Legislature intended anything else, it would have said so more directly.

IV

Additionally, we reject the notion that 2 Restatement Judgments, 2d, § 83, pp 266-267, contemplates an abrogation of preclusion under the instant statutory scheme. In discussing the scope of the provision, the commentary indicates that this section would not apply "when a determination of an administrative tribunal is being subjected to direct judicial review." Comment a, p 268. This is a logical conclusion given that "such a review is a continuation of the original administrative litigation and the final outcome is still in contest. The

[19] Section 606 plainly provides that "*appeal[s* from] the [Civil Rights Commission] shall be reviewed de novo." (Emphasis added.)

rules of res judicata do not foreclose the appellate contest, just as they do not prevent an appellate court from reversing a lower judicial tribunal." *Id.*

Certainly, the instant case technically fits within the scope of § 83 because it is not on direct appeal. However, relying on a provision addressing a direct appeal to support the finding of legislative intent to abrogate preclusion principles seems counterintuitive. Section 83 simply does not support such a finding. It is illogical to believe that a provision that would displace the situation from the scope of the rule could be used as the basis for finding a new, original action permissible.

The § 83 commentary[20] and its accompanying illustration confirm that § 83 is not controlling in this case. The example contemplates a statute which provides " 'the remedies provided under this statute *are in addition to all other remedies available to an affected employee or prospective employee.*' " *Id.* (emphasis added). In this case, the operable provision provides that an appeal shall be reviewed de novo. Obviously, explicit cumulative remedies, as presented in the example, and de novo review on appeal, as is presented in this case, are not remotely similar. Accordingly, the legislative intent envisioned by § 83 is not satisfied in this case.

V

The dissents appear to confuse the question directly presented to this Court. The question is not whether the standard of review on direct appeal should be de novo on the record instead of

---

[20] The relevant commentary states that "[t]he statutory scheme may contemplate that the [subsequent] tribunal is required to make its own determination of the issue in question, even though the issue has been previously litigated in another forum." 2 Restatement Judgments, 2d, § 83, comment h, p 280.

competent, material, and substantial evidence.[21] *Viculin, supra.* The question is whether the Legislature intended to abrogate well-established preclusion doctrines when a plaintiff files a new, original action after adverse agency and circuit court decisions. Specifically, the point of contention centers on whether the Legislature intended a Civil Service Commission determination to be final in the absence of an appeal.[22] To this question, the answer is undoubtedly yes, the Legislature intended it to be final.

There are numerous laws regarding discrimination, the most obvious of which is the constitution.[23] There, the framers saw fit to provide the Civil Service Commission with the authority to resolve discrimination claims occurring in state employment.[24] Desiring to extend this protection to private employment, the framers then created Const 1963, art 5, § 29, which created the Civil Rights Commission. In light of these provisions, it becomes clear that the delegates contemplated that two constitutionally created administrative bodies would hear similar discrimination claims.

[21] Indeed, it is not before this Court because plaintiff did not argue on appeal in the first circuit court action that a de novo standard applies, did not appeal that decision, and finally, did not make a similar contention in this Court. The dissents would provide this remedy despite the procedural posture of this case and despite the failure to directly present this question to this Court. In doing so, the dissents would sanction an additional remedy for a plaintiff coming from the Civil Service Commission.

[22] It must be remembered that when searching for legislative intent, our judicial duty is simply "to construe the legislative will as we find it, without regard to our own views as to the wisdom or justice of the act." *McKibbin v Corp & Securities Comm,* 369 Mich 69, 81; 119 NW2d 557 (1963).

[23] The Legislature is presumed to legislate with "knowledge of and regard to existing laws upon the same subject . . . ." *Lenawee Co Gas & Electric Co v City of Adrian,* 209 Mich 52, 64; 176 NW 590 (1920).

[24] Const 1963, art 11, § 5, expressly mandates that "[n]o appointments, promotions, demotions or removals . . . shall be made for religious, racial or partisan considerations."

Against this backdrop, however, the delegates only provided de novo review for claims originating in the Civil Rights Commission.[25]

When the Legislature enacted the Civil Rights Act pursuant to the requirements set forth in Const 1963, art 1, § 2[26] and art 5, § 29,[27] it simply followed the procedures already existing under the constitution. Both the constitution and the Legislature provided that appeals from the Civil Rights Commission would be de novo, while also providing that parties have a direct and immediate right to remedies in the courts. Without changing the substance of that already provided as a constitutional right,[28] it must be presumed that the Legislature adopted the intent of the framers.[29] Review-

---

[25] See Const 1963, art 5, § 29, which provides: "*Appeals* from final orders of the commission, including cease and desist orders and refusals to issue complaints, shall be tried de novo before the circuit court having jurisdiction provided by law." (Emphasis added.)

[26] No person shall be denied the equal protection of the laws; nor shall any person be denied the enjoyment of his civil or political rights or be discriminated against in the exercise thereof because of religion, race, color or national origin. *The legislature shall implement this section by appropriate legislation.* [Emphasis added.]

[27] It shall be the duty of the commission *in a manner which may be prescribed by law to investigate alleged discrimination against any person because of religion, race, color or national origin in the enjoyment of the civil rights guaranteed by law and by this constitution, and to secure the equal protection of such civil rights without such discrimination.* [Emphasis added.]

[28] See § 606.

[29] The intent that Justice MALLETT says is present is, in reality, not an express or an implied intent to abrogate preclusion principle. Instead, the intent inferred from § 606 and § 803 was merely a restatement of the obvious, i.e., a recognition that the constitution already afforded these rights to discrimination claimants. In other words, even if the Legislature said nothing or, for that matter, said the opposite of that already provided in the constitution, it would have no effect on the right to de novo review or the right to direct and immediate relief in circuit court. These rights were previously provided in Const 1963, art 5, § 29, and the Legislature has no power

ing the convention debate and the *plain language* of these provisions, the intent is simply as follows: Appeals from the Civil Rights Commission shall be de novo and parties need not exhaust administrative remedies before proceeding to circuit court.[30]

## VI

Finally, we do not share the dissents' fears regarding the consequences preclusion could have on the Civil Service Commission. The dissents contend that preclusion would discourage claimants from filing before the Civil Service Commission in fear of losing the right to a remedy in the courts. In addition, Justice MALLETT maintains that preclusion would create a greater incentive for the government to actively contest this claim, thereby "undermining the advantages of informality, cost, and speed in the resolution of such disputes in the administrative forum." *Post* at 567.

The dissents appear to forget that a claimant has three forums to pursue a discrimination claim: the Civil Service Commission, the Civil Rights Commission, and the circuit court. Moreover,

___

to impede these constitutional rights. *Civil Rights Comm v Clark,* 390 Mich 717, 726; 212 NW2d 912 (1973).

[30] As Justice COOLEY explained long ago:

Where the statute is plain and unambiguous in its terms, the courts have nothing to do but to obey it. They may give a sensible and reasonable interpretation to legislative expressions which are obscure, but they have no right to distort those which are clear and intelligible. The fair and natural import of the terms employed, in view of the subject matter of the law, is what should govern. . . .

These rules are especially applicable to constitutions; for the people, in passing upon them, do not examine their clauses with a view to discover a secret or a double meaning, but accept the most natural and obvious import of the words as the meaning designed to be conveyed. [*People ex rel Twitchell v Blodgett,* 13 Mich 127, 167-168 (1865).]

plaintiff has not asked this Court to alter the standard of review for discrimination claims arising in the Civil Service Commission.[31] In any event, unlike *Storey,* in which we considered preclusion in the context of the MESC proceeding on unemployment benefits, the Civil Service Commission is not such a limited body. In fact, it is the constitutionally created agency designed to deal with *all* facets of state employment. If this creates the alleged consequences espoused by the dissents, the Legislature is the appropriate body to remedy this problem.

## VII

We find that plaintiff is estopped from relitigating this discrimination claim in circuit court. With all the requirements of administrative estoppel being satisfied, including the intent to make the decision final in the absence of an appeal, we refuse to sanction a greater multiplicity of litigation than anything currently provided by statute or unnecessarily waste judicial resources. We reverse the decision of the Court of Appeals.

BRICKLEY, C.J., and BOYLE and WEAVER, JJ., concurred with RILEY, J.

MALLETT, J. (*dissenting.*) We disagree with the majority and would hold that the doctrine of collateral estoppel does not apply to Civil Service Commission decisions because the Legislature intended the Civil Rights Act to abrogate the common-law rules of preclusion. Thus, we would affirm the decision of the Court of Appeals and allow the plaintiff to relitigate issues of discrimination in

---

[31] See part v.

circuit court following a final determination by the Civil Service Commission.

I

Generally, collateral estoppel applies to an administrative agency's final decision. *Lilienthal v City of Wyandotte*, 286 Mich 604; 282 NW 837 (1938), and *Storey v Meijer, Inc*, 431 Mich 368, 372; 429 NW2d 169 (1988). The decision is "conclusive of the rights of the parties, or their privies, in all other actions or suits in the same or any other tribunal of concurrent jurisdiction on the points and matters in issue in the first proceeding." *Lilienthal, supra* at 616. However, each agency must be assessed separately, and no blanket statement regarding collateral estoppel can be made for all administrative agencies.[1]

In order to determine whether the plaintiff's action is barred by collateral estoppel, we must examine the Civil Service Commission's final decision in light of general collateral estoppel requirements[2] and the three-part test adopted in *Roman Cleanser Co v Murphy*, 386 Mich 698, 703-704; 194 NW2d 704 (1972), and more recently applied in

[1] Collateral estoppel is a judicial creation. *Howell v Vito's Trucking & Excavating Co*, 20 Mich App 140, 146; 173 NW2d 777 (1969). Its general purpose is to "strike a balance between the need to eliminate repetitious and needless litigation and the interest in affording litigants a full and fair adjudication of the issues involved in their claims." *Storey v Meijer, Inc, supra* at 372; *Senior Accountants, Analysts & Appraisers Ass'n v Detroit*, 399 Mich 449, 457-458; 249 NW2d 121 (1976).

[2] The general requirements of collateral estoppel are set forth in 1 Restatement Judgments, 2d, § 27, p 250, which states that "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." This Restatement definition was adopted in *Senior Accountants v Detroit, supra* at 458, but at that time it was defined in § 68 of the Restatement. The definition was moved to § 27 in the Second Restatement.

*Storey v Meijer, Inc, supra.* The decision will be given preclusive effect if (1) the administrative determination is adjudicatory in nature, (2) there is a method of appeal, and (3) it is clear that the Legislature intended the agency decision to be final in the absence of an appeal. *Id.* at 373.

The first prong of the *Storey* test, assessing whether an administrative agency's determination is adjudicatory in nature, requires a comparison between the similarity of the agency's procedure and that of a court. 2 Restatement Judgments, 2d, § 83, comment b, p 268; 2 Davis & Pierce, Administrative Law (3d ed), § 13.3, p 250.

Like the majority, we do not contest that the commission's determination is adjudicatory in nature. The commission is a quasi-judicial administrative agency created by the constitution, and the specific determination is similar in numerous respects to that of a judicial proceeding. *Viculin v Dep't of Civil Service,* 386 Mich 375, 386; 192 NW2d 449 (1971), citing *People ex rel Clardy v Balch,* 268 Mich 196, 200; 255 NW 762 (1934), and *In re Fredericks,* 285 Mich 262, 266; 280 NW 464 (1938). The employee has the right to be represented by counsel, and the commission has the authority to subpoena witnesses and require the production of documents. In addition, the employee has the right to examine and cross-examine witnesses, the employee has the right to submit exhibits, and there is a definite point of finality in the proceedings. Although proceedings before the commission may not be as extensive as those employed by a court, the plaintiff filing a claim with the commission trades the rigidity of a judicial tribunal for the informality, simplicity, and rapidity of an administrative determination. There is no indication that the differences between a

commission hearing and a judicial proceeding hinder the ability to present a discrimination claim.

The second prong of the *Storey* test requires that a method of appeal be available, but is not concerned with whether an appeal was taken. While an actual appeal is not necessary in order for an agency decision to be given preclusive effect,[3] the plaintiff in this case pursued his appeal. Again, we do not contest that the commission procedures satisfy this aspect of the test. The Michigan Constitution allows final commission decisions to be appealed to the circuit court. Const 1963, art 6, § 28.

The critical issue disputed in this case is whether the commission's civil rights determination fulfills the third prong of the test; that is, whether the Legislature, in enacting the Civil Rights Act, intended to abrogate the traditional rules of preclusion.[4] Because the rules of preclusion are a judicial creation, *Howell v Vito's Truck-*

---

[3] 2 Restatement Judgments, 2d, § 83, comment a, pp 267-268. Applying collateral estoppel to unappealed agency decisions is not a novel concept. In *Senior Accountants, supra* at 453, we addressed whether an unappealed Employment Relations Commission decision collaterally estopped a subsequent action in circuit court. We held

> that plaintiffs are barred from suing for "damages" under a breach of contract theory by the doctrine of collateral estoppel because the questions of fact necessary for determination of "damages" by the circuit court in this case would be identical to questions of fact already determined by the Michigan Employment Relations Commission in concluding "back pay" was improper in this case.

The requirement is that the plaintiff have the opportunity to appeal the decision, not whether the plaintiff takes advantage of the opportunity.

[4] When determining whether agency determinations preclude relitigation of civil rights claims in a federal judicial forum, the United States Supreme Court consistently examines the intent of Congress in enacting the specific legislation in question. See *Alexander v Gardner-Denver Co,* 415 US 36; 94 S Ct 1011; 39 L Ed 2d 147 (1974); *Kremer v Chemical Construction Corp,* 456 US 461; 102 S Ct 1883; 72 L Ed 2d 262 (1982); *Univ of Tennessee v Elliott,* 478 US 788; 106 S Ct 3220; 92

*ing & Excavating Co,* 386 Mich 37; 191 NW2d 313 (1971), the presumption of preclusion will not apply " 'when a statutory purpose to the contrary is evident.' " *Astoria Federal S & L Ass'n v Solimino,* 501 US 104, 108; 111 S Ct 2166; 115 L Ed 2d 96 (1991), quoting *Isbrandtsen Co v Johnson,* 343 US 779, 783; 72 S Ct 1011; 96 L Ed 1294 (1952).

According to *Storey* and 2 Restatement Judgments, 2d, § 83, collateral estoppel is not to be applied to administrative agency decisions if it conflicts with a legislative policy that permits a court to make an independent determination of an issue in a subsequent civil proceeding. *Storey* at 377. 2 Restatement Judgments, 2d, § 83(4), p 267, provides:

> An adjudicative determination of an issue by an administrative tribunal does not preclude relitigation of that issue in another tribunal if according preclusive effect to determination of the issue would be incompatible with a legislative policy that:
> (a) The determination of the tribunal adjudicating the issue is not to be accorded conclusive effect in subsequent proceedings; or
> (b) The tribunal in which the issue subsequently arises be free to make an independent determination of the issue in question.

We find that Civil Service Commission decisions are subject to this exception to the general rule of preclusion. Collateral estoppel does not apply to final decisions of the Civil Service Commission because the Legislature did not intend these determinations to be conclusive in subsequent civil litigation. Applying preclusive effect to these decisions is incompatible with legislative policy that

L Ed 2d 635 (1986); *Astoria Federal S & L Ass'n v Solimino,* 501 US 104; 111 S Ct 2166; 115 L Ed 2d 96 (1991).

allows a court to make an independent determination of the same issue. *Storey* at 377; 2 Restatement Judgments, 2d, § 83.

## II

Unlike the majority, we find that the Legislature intended to allow an independent determination in circuit court in the standard of review set forth in the Civil Rights Act. MCL 37.2606; MSA 3.548(606). Although the requirement set forth in the Civil Rights Act applies only to review of Civil Rights Commission determinations, we find no legislative intent to treat Civil Service Commission determinations differently.

The standard of review set forth in the Civil Rights Act indicates that the Legislature intended plaintiffs to have an independent review of their civil rights claims in a judicial forum. Section 606 of the act provides that "[a]n appeal before the circuit court shall be reviewed de novo." MCL 37.2606; MSA 3.548(606).[5] Allowing a judicial proceeding when plaintiffs pursue their administrative remedy in the Civil Rights Commission,[6] but

---

[5] As recently explained by this Court, the term "de novo" means that "a circuit court, in reviewing a decision of the Civil Rights Commission, may substitute its assessment for the findings, conclusion, and decision of the Civil Rights Commission." *Dep't of Civil Rights ex rel Johnson v Silver Dollar Cafe,* 441 Mich 110, 116; 490 NW2d 337 (1992).

[6] Whether a previous decision of the Civil Rights Commission precludes a subsequent trial in a judicial forum is not before the Court and we do not decide the effect of a Civil Rights Commission determination. We do note, however, that a similar conflict will generally not arise when the Civil Rights Commission is the administrative agency because the commission has enacted an internal rule of procedure that requires plaintiffs to include in their complaint

[a] statement as to any other proceeding, civil or criminal, based upon the same facts, occurrences, or transactions as alleged in the complaint, together with a statement as to the status or disposition of the other action. Where such a proceed-

denying a similar treatment when plaintiffs seek adjudication by the Civil Service Commission violates the goals of the Civil Rights Act.

The Civil Service Commission was created by the people of Michigan and has been in effect since January 1, 1941, through the enactment of art 6, § 22, of the Constitution of 1908, now art 11, § 5, of the current Michigan Constitution. This section provides:

> The commission shall classify all positions in the classified service according to their respective duties and responsibilities, fix rates of compensation for all classes of positions, approve or disapprove disbursements for all personal services, determine by competitive examination and performance exclusively on the basis of merit, efficiency and fitness the qualifications of all candidates for positions in the classified service, make rules and regulations covering all personnel transactions, and regulate all conditions of employment in the classified service. [Const 1963, art 11, § 5.]

It is undisputed that the purpose of the amendment was to eliminate the "spoils system" and the politicization of state employment. The goal was to improve the state of the classified civil service through the efforts of a single agency. See *Council No 11, AFSCME v Civil Service Comm,* 87 Mich App 420, 424; 274 NW2d 804 (1978), aff'd 408 Mich 385; 292 NW2d 442 (1980); *Reed v Civil Service Comm,* 301 Mich 137, 154-155; 3 NW2d 41 (1942); *Dep't of Civil Rights ex rel Jones v Civil Service Dep't,* 101 Mich App 295; 301 NW2d 12 (1980).

ing is pending, the commission or department may, in its discretion, delay consideration or action on the complaint filed. [1979 AC, R 37.4(4)(e).]

Presumably, the Civil Rights Commission stays its proceedings and awaits the result in the other forum.

Although the Civil Rights Commission was created to end invidious forms of discrimination through the effort of a single agency, the Civil Rights Commission does not have exclusive jurisdiction over state employees' discrimination claims. As the Court of ‘Appeals has correctly observed, the Civil Service Commission,[7] the Civil Rights Commission,[8] and the circuit court[9] have concurrent jurisdiction when a "state employee asserts a civil rights violation." *Walters v Dep't of Treasury*, 148 Mich App 809, 816; 385 NW2d 695 (1986); *Marsh v Dep't of Civil Service*, 142 Mich App 557; 370 NW2d 613 (1985).

Concurrent jurisdiction does not undermine the legislative goal of providing an independent determination in a judicial forum. An independent review is guaranteed in two of the three forums in which civil service employees can file a discrimination claim: the circuit court and review de novo of a Civil Rights Commission decision pursuant to MCL 37.2606; MSA 3.548(606).

Review of Civil Service Commission determinations, however, is governed by a more deferential standard. Civil Service Commission determinations are reviewed to determine if there is "competent, material and substantial evidence on the record as a whole"[10] to support the commission's decision.

[7] Const 1963, art 11, § 5.

[8] MCL 37.2601-37.2605; MSA 3.548(601)-3.548(605).

[9] MCL 37.2801; MSA 3.548(801).

[10] Const 1963, art 6, § 28. As illustrated in comments of the constitutional drafters, the substantial evidence standard of review "is simply a review on the record made before the board of review or commission below. It is a summary proceeding . . . ." 1 Official Record, Constitutional Convention 1961, p 1466 (comments of Leibrand]. As noted in *Employment Relations Comm v Detroit Symphony Orchestra, Inc*, 393 Mich 116, 124; 223 NW2d 283 (1974), "such a review does not attain the status of de novo review . . . . Such review must be undertaken with considerable sensitivity in order that the courts accord due deference to administrative expertise and not invade the province of exclusive administrative fact finding . . . ."

*Viculin, supra; Crider v Michigan,* 110 Mich App 702; 313 NW2d 367 (1981). Thus, if we were to grant preclusive effect to a discrimination decision by the Civil Service Commission, plaintiffs who pursued their discrimination claims before the commission could never secure an independent determination in a judicial forum.

For these reasons, we would find that the Legislature did not intend such result, but rather intended to guarantee "the right of any party to direct an immediate legal or equitable remedies in the courts of this state." Const 1963, art 5, § 29; MCL 37.2803; MSA 3.548(803).

A

Treating the Civil Rights Commission and the Civil Service Commission differently is unsupported by the language or the intent of the Civil Rights Act. Civil service disputes often involve factors and considerations not present outside the civil service arena. In instances in which civil service employment presents unique constraints and obligations, the Civil Service Commission may be a better informed decisionmaker than either the courts or other administrative agencies that are not familiar with civil service employment.

We do not, however, find discrimination to be such a situation. Discrimination is discrimination, whether in the civil service arena or in the private sector. While the Civil Service Commission is undoubtedly frequently required to determine whether discrimination has occurred in state employment, we are unable to conclude that it has special knowledge or expertise requiring greater deference to its determinations than that of the Civil Rights Commission. To the contrary, it would be anomalous to give greater deference to the

determinations of the Civil Service Commission with regard to discrimination issues, an agency that only addresses discrimination as one facet of its jurisdiction,[11] than to the Civil Rights Commission, the agency expressly created to remedy discriminatory treatment.[12]

We conclude that because a determination by the primary agency vested with eliminating discrimination does not preclude an independent determination in a judicial forum, neither should the determination of the Civil Service Commission.

Civil rights claims have consistently been treated differently than other employment claims. While the Civil Service Commission possesses "plenary power" to determine the procedures by which "a state civil service employee may review his grievance,"[13] including claims arising under the Civil Rights Act,[14] denying preclusive effect to the Civil Service Commission discrimination determi-

[11] It is undisputed that the civil service system was established to put an end to the evils of the "spoils system" which had politicized all levels of state government. The goal of the amendment was to improve the classified civil service by the adoption of a merit system. [*Council No 11, AFSCME, supra,* at 424, citing *Reed v Civil Service Comm, supra* at 154-155.]

[12] The Civil Rights Act "is aimed at 'the prejudices and biases' borne against persons because of their membership in a certain class . . . and seeks to eliminate the effects of offensive or demeaning stereotypes, prejudices, and biases." *Miller v C A Muer Corp,* 420 Mich 355, 363; 362 NW2d 650 (1984) (citations omitted).

[13] *Viculin* at 393.

[14] The classified civil service is not exempted from legislation prohibiting discrimination and securing civil rights in employment. Thus the Elliott-Larsen and Handicappers' Civil Rights Acts apply to employees of the classified civil service, and the Civil Rights Commission and circuit court have jurisdiction over discrimination claims of aggrieved employees. [*Marsh, supra* at 569.]

We express no opinion regarding the intent of the Legislature in enacting the Handicappers' Civil Rights Act or the preclusive effect of a Civil Service Commission determination of an issue covered by that act. MCL 37.1101 *et seq.*; MSA 3.550(101) *et seq.*

nation recognizes the unique nature of a discrimination claim and fulfills the intent of the Legislature to provide an independent determination in a judicial forum.

B

Lastly, our conclusion is further justified by the consequences that would follow from barring the plaintiff from receiving an independent determination by the circuit court. Civil service employees are not required to exhaust their administrative remedies before filing a civil rights claim directly in circuit court.[15] However, plaintiffs should not be discouraged from pursuing an administrative remedy that offers the advantage of resolving disputes more quickly and with less expense than similar judicial proceedings. We tacitly acknowledged this concern in *Storey* when we noted that granting preclusive effect to determinations of the Employment Security Commission would entail a

> substantial risk that the potential application of collateral estoppel will cause a qualified claimant to forego a claim for unemployment compensation in order to protect the right to pursue a civil claim with its full range of benefits. [*Id.* at 378.]

Likewise, were we to adopt the defendant's argument here, civil service employees, in order to avoid the preclusive effect of an adverse Civil Service Commission determination, would be encouraged to forgo proceedings before the commission in order to preserve an independent determination in a judicial forum.

As we also recognized in *Storey,* "[d]ue to the full range of remedies available in a civil action, the parties have a greater incentive to fully liti-

---

[15] *Marsh, supra* at 562; *Walters, supra* at 816.

gate the civil claim than the claim for unemployment benefits." *Id.* at 378. The same incentives are present in proceedings before the Civil Service Commission.[16] Fearful of an adverse determination, the defendant employer would have a strong incentive to contest discrimination in all Civil Service Commission proceedings because a victorious plaintiff would be able to offensively assert the determination of the commission in circuit court and recover damages that the commission does not have the authority to award. Thus, application of collateral estoppel would encourage exhaustive contests of discrimination claims, undermining the advantages of informality, cost, and speed in the resolution of such disputes in the administrative forum.

III

In enacting the Civil Rights Act, the Legislature sought to ensure an independent determination in a judicial forum. An independent determination cannot be guaranteed if preclusive effect is granted to the previous Civil Service Commission discrimination determination.

We would hold that the Legislature intended to eliminate the preclusive effects of the Civil Service Commission determination. For this reason, we would affirm the decision of the Court of Appeals and would hold that a final determination by the Civil Service Commission does not preclude the plaintiff from relitigating the same issues in circuit court.

---

[16] We have traditionally required mutuality of estoppel for collateral estoppel to apply. *Lichon v American Universal Ins Co,* 435 Mich 408, 428; 459 NW2d 288 (1990); *Storey* at 373, n 3; *Howell v Vito's Trucking Co,* n 1 *supra* at 43. " 'The estoppel is mutual if the one taking advantage of the earlier adjudication would have been bound by it, had it gone against him.' "

CAVANAGH, J., concurred with MALLETT, J.

LEVIN, J. David Nummer was transferred from
one unit of the Department of Treasury to an-
other. He filed a grievance with the Civil Service
Commission, claiming that the transfer breached
an enforceable promise and constituted an affirma-
tive action program that violated civil service
rules mandating merit selection and barring sex
and race discrimination. The hearing officer and,
on review, the Civil Service Commission, found
that there was no probative evidence of an en-
forceable promise, and that the transfer was for
"legitimate business considerations." The circuit
court affirmed.

Nummer had by then commenced this action in
the circuit court, claiming that his civil rights
were violated. The Court of Appeals, reversing the
decision of the circuit court, held that this action
was not precluded by the decision of the Civil
Service Commission.[1] The majority reverses, con-
cluding that the doctrine of collateral estoppel
precludes this action.

I agree with the majority that ordinarily the
decision of an administrative tribunal regarding a
factual issue,[2] following an adjudicative hearing,
bars a party from seeking a contrary finding in a
civil action involving another party to the adminis-
trative proceeding.[3]

There are, however, a number of factors—see
parts II through VI—that distinguish this case

[1] 200 Mich App 695; 504 NW2d 724 (1993).

[2] Or a legal issue.

[3] When an issue of fact or law is actually litigated and deter-
mined by a valid and final judgment, and the determination is
essential to the judgment, the determination is conclusive in a
subsequent action between the parties, whether on the same or
a different claim. [1 Restatement Judgments, 2d, § 27, p 250.]

from other cases in which relitigation of a factual issue might be sought. Having in mind that the doctrine of collateral estoppel is not ordained by statute, but is a judicial creation, those distinguishing factors justify, in my opinion, recognizing an exception permitting relitigation of the issues of sex and race discrimination.

I

David Nummer pursued a grievance before the Civil Service Commission, claiming that his transfer from the Tax Fraud Division to the Discovery Division of the Treasury Department violated an enforceable promise made by department officials that he would continue in the Tax Fraud Division in a combined position of investigator and auditor. He also claimed that he was transferred because he is a white male, in violation of the civil service rule requiring that personnel decisions be made on the basis of merit,[4] and the constitutional provision[5] and civil service rule[6] barring transfers in the classified service for racial (and by rule, sexual) considerations.

---

[4] All appointments and promotions to positions in the classified service and all measures for the control and regulation of employment in such positions, and separation therefrom, shall be based on merit, efficiency and fitness. [Civil Service Commission Rule 1-1.1.]

[5] No appointments, promotions, demotions or removals in the classified service shall be made for religious, racial or partisan considerations. [Const 1963, art 11, § 5.]

[6] Conditions.—No person shall be discriminated against in seeking employment, in being appointed or promoted, or in any condition of employment, in the classified service, or any separation therefrom, because of race, color, religion, national origin, ancestry, handicap, partisan considerations, age or sex. Age or sex may be determined to a bona fide occupational qualification. [Civil Service Commission Rule 1-2.1.]

The hearing officer found that there was "no probative evidence to establish that a valid and enforceable promise was made to Nummer that he would continue to work either as a criminal investigator or that he would remain—throughout his government service—in [the Tax Fraud Division]." The hearing officer also found that "[t]he transfer was motivated by legitimate business considerations."[7]

The Employment Relations Board of the Civil Service Commission denied leave to appeal.[8] The Civil Service Commission reviewed and approved the decision of the Employment Relations Board.[9]

---

[7] On the matter of discrimination, the claim is that auditors are white males and that most of the persons hired as regulation agents are from minority groups—women and persons of color. Grievant relies on this single fact to establish his claim. It is not sufficient to do so! The transfer was motivated by legitimate business considerations. I find that Grievant has not overcome this fact in his proofs. That the auditors were all men and that mostly women and other minorities replaced them is largely irrelevant because of the differing levels of the two classifications. In addition, the eligibility pool from which the regulation agents were selected was made up primarily of minority persons and this, not discrimination, is the reason for the staffing.

DECISION

The Department of Treasury's transfer of David A. Nummer from its Tax Fraud to its Discovery Division was based exclusively on business considerations. As such, the transfer did not violate either the Merit Principles, Section 1-1.1 or Section 1-2.1 of the Civil Service Rules. Therefore, the grievance is dismissed.

The grievance decision is dated June 14, 1988, mailed June 17, 1988.

[8] The matter was considered at a board conference on November 7, 1988, mailed November 9, 1988. The board said: "Leave to appeal is denied because the Board concludes that no meritorious basis for an appeal of the Grievance Hearing Officer's Decision has been shown by Appellant."

[9] The mailing date was January 20, 1989.

The circuit court, on appeal from the Civil Service Commission, found that there was competent, material, and substantial evidence on the whole record to support the hearing officer's findings, and affirmed.[10] Nummer did not seek leave to appeal the circuit court's decision to the Court of Appeals.

Nummer commenced this action[11] pursuant to § 801(1) (art 8) of the Civil Rights Act,[12] claiming that in January, 1987, he, and the other seven auditors, all of whom were white males, in the Tax Fraud Division, were summarily transferred to the newly formed Discovery Division, and that they were replaced by twenty "regulation agents," only four of whom were white males.

Nummer further alleged that the primary objective of the reorganization was "the achievement of certain affirmative action goals which goals could only be accomplished by disenfranchising those employees currently in certain lines of progression, and in particular, your Plaintiff; this has the effect of depriving Plaintiff of his position because he was and is a white male." Nummer claimed that the transfer violated his constitutional right to be free of discrimination because of race or color,[13] his rights under the constitutional provision establishing the Civil Rights Commission,[14] and his right to be free of discrimination based on sex and race in the terms and conditions of his employment under the Civil Rights Act.[15] The

[10] The opinion of the circuit judge is dated January 5, 1990.

[11] On December 12, 1989.

[12] A person alleging a .violation of this act may bring a civil action for appropriate injunctive relief or damages, or both. [MCL 37.2801(1); MSA 3.548(801)(1).]

[13] Const 1963, art 1, § 2.

[14] Const 1963, art 5, § 29.

[15] MCL 37.2201 et seq.; MSA 3.548(201) et seq.

complaint also alleged that the transfer breached an enforceable promise.

The circuit judge granted summary disposition because the decision of the Civil Service Commission "requires dismissal due to collateral estoppel. . . ." The Court of Appeals reversed,[16] stating:

> It is clear that in enacting the Civil Rights Act, the Legislature chose to set aside the principles of collateral estoppel in civil rights cases and to countenance a multiplicity of litigation. As provided by the statutory scheme, the Legislature intended to permit civil rights litigants to have "two bites of the apple," even if two separate proceedings reach opposite results or engender repetitious and perhaps needless litigation in violation of the principles of collateral estoppel. As this Court noted in *Walters* [*v Dep't of Treasury,* 148 Mich App 809, 819; 385 NW2d 695 (1986)], quoting *Pompey v General Motors Corp,* 385 Mich 537, 560; 189 NW2d 243 (1971), a civil action for the redress of a violation of a civil rights statute may be pursued in addition to " 'the remedial [administrative] machinery provided by statute.' " Thus, a plaintiff whose civil rights claim is denied by the Civil Service Commission may file an original action in the circuit court, which may conclude otherwise and award injunctive relief or damages, including costs and reasonable attorney fees.

The Court of Appeals affirmed the circuit court's grant of summary disposition in favor of the department respecting Nummer's breach of an enforceable promise claim, but reversed regarding his race and sex discrimination claims under the Civil Rights Act, and remanded the case for further proceedings regarding those claims only.

## II

In a circuit court civil rights action, in contrast

---

[16] 200 Mich App 700.

with a Civil Service Commission proceeding, the parties have a right to a jury (or judge) determination of the factual issues.[17]

The administrative hearing and decision-making process, while adjudicatory, is informal and expedited, in contrast with the formal and deliberative proceedings in a circuit court trial.

A new determination by a circuit court jury of the issue of sex and race discrimination, decided against Nummer by the Civil Service Commission, would thus, as set forth in the Restatement of Judgments, be "warranted by differences in the quality or extensiveness of the procedures followed in" circuit court as compared to those followed in a Civil Service Commission administrative proceeding.[18]

### III

This is not a case in which the litigant seeking to relitigate an adverse decision by an administra-

---

[17] In *Marsh v Dep't of Civil Service,* 142 Mich App 557, 569; 370 NW2d 613 (1985), and earlier and later cases, the Court of Appeals held and recognized that there is a right to a jury trial in an action brought pursuant to § 801 of the Civil Rights Act. See n 12 for text of § 801(1).

[18] Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:

\* \* \*

(3) A new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts or by factors relating to the allocation of jurisdiction between them . . . . [1 Restatement Judgments, 2d, § 28, p 273.]

Cf. *Beacon Theatres, Inc v Westover,* 359 US 500; 79 S Ct 948; 3 L Ed 2d 988 (1959); *Meeker v Ambassador Oil Corp,* 375 US 160; 84 S Ct 273; 11 L Ed 2d 261 (1963); *People v Demery,* 104 Cal App 3d 548, 560-561; 163 Cal Rptr 814 (1980); *State Farm Fire & Casualty Co v Emde,* 706 SW2d 543, 546 (Mo App, 1986).

tive tribunal could have obtained an adjudication of all his claims in a circuit court action. A state civil servant in the classified service cannot, in a circuit court action asserting that his civil rights have been violated, join claims seeking redress for violation of his civil service rights.

Nummer's claims that his transfer from the Tax Fraud Division to the Discovery Division of the Treasury Department violated an enforceable promise, and also violated a rule requiring that personnel decisions be made on the basis of merit, could only be advanced before the Civil Service Commission, and could not have been advanced in circuit court.[19] The third strand of his complaint, the civil rights claim, alone can be advanced in circuit court.[20]

A state civil servant will generally conclude that he is more likely to prevail on a civil rights claim in a circuit court civil rights action than before the Civil Service Commission. Today's decision—precluding a circuit court civil rights action following a Civil Service Commission hearing on a civil rights grievance—will generally result in state civil servants splitting their claims of civil rights and noncivil rights grievances. The state civil servant henceforth will not file a grievance involving a civil rights claim before the Civil Service

[19] See *Norris v Liquor Control Comm,* 342 Mich 378, 381; 70 NW2d 761 (1955).

Even if Nummer could have asserted a claim for damages due to breach of enforceable promise and violation of the merit rule in the Court of Claims, he probably would have been required to exhaust his administrative remedies before the Civil Service Commission before commencing an action in the Court of Claims. See *Bays v Dep't of State Police,* 89 Mich App 356, 359-360; 280 NW2d 526 (1979).

In all events, Nummer had a right under the civil service rules to file a grievance with the Civil Service Commission respecting his breach of enforceable promise claim, and to a hearing thereon.

[20] I agree with the majority that, as held in *Marsh,* n 17 *supra,* pp 562-563, Michigan law "does not require exhaustion of administrative remedies before filing [a civil rights action] in circuit court." *Ante,* p 547.

Commission, and will file in circuit court,[21] result-
ing in litigation before the Civil Service Commis-
sion of noncivil rights grievances and in the circuit
court of civil rights claims, thus assuring the
multiplicity of litigation that the doctrine of collat-
eral estoppel seeks to discourage.[22]

IV

In some cases, including this case, the factual
predicate of a state civil servant's noncivil rights
grievance may so relate to the factual predicate of
his civil rights grievance that a Civil Service Com-
mission hearing officer's findings on the noncivil
rights grievance may decide factual issues central
to a circuit court civil rights action. Where that
might occur, a well-informed and advised civil
servant henceforth must choose whether to forgo,
by not grieving his noncivil rights claims—in order
to protect his civil rights claim against an adverse
finding by a Civil Service Commission hearing
officer on an issue central to a circuit court civil
rights action—or run the risk of such an adverse
finding by filing a grievance regarding his noncivil
rights claims.

Even if Nummer had "chosen" to forgo filing a
grievance with the Civil Service Commission re-
specting violation of his civil rights, application of
conventional collateral estoppel doctrine would
nevertheless bar his circuit court civil rights ac-
tion. The Civil Service Commission's finding that
he had been transferred for "legitimate business
considerations"—thus rejecting his merit selection

_____

21 Or possibly with the Civil Rights Commission.

22 As stated by the majority, according preclusive effect to adminis-
trative fact finding serves the parties' "interest in avoiding costly and
repetitive litigation, as well as preserving judicial resources." (*Ante,* p
542, citing *Univ of Tennessee v Elliott,* 478 US 788, 798; 106 S Ct
3220; 92 L Ed 2d 635 [1986].)

grievance—would ordinarily preclude relitigation of the bona fides of the reasons for the transfer in the circuit court civil rights action.

V

While the majority's conclusion that the circuit court civil rights action is precluded by the doctrine of collateral estoppel might be read as limited to a case, such as this, in which the claim of discrimination was raised before the Civil Service Commission and there was a finding that the claim of discrimination was not meritorious, it no doubt would be contended in another case that, although no claim of discrimination had been presented before the Civil Service Commission, factual findings in the Civil Service Commission proceeding preclude relitigation of the issue of the reason for the transfer.

Preclusion is a judicially created doctrine that serves to eliminate redundant litigation. It should not be extended to a case in which the litigation is not redundant.

A state civil servant who has both a civil rights grievance and a noncivil rights grievance should be able to seek a Civil Service Commission hearing of his noncivil rights grievance without running the risk that the decision of that claim will preclude a circuit court civil rights claim even if the employee does not file a grievance regarding his civil service discrimination claim.

The majority should limit its holding to the facts of this case where grievances involving both a civil rights and a noncivil rights claim were filed. The majority should, I believe, add that where a grievance does not involve a civil service discrimination claim, a finding regarding another claim will not preclude a civil rights action. To fail to do so may

mean that a person employed in the state classified service will be constrained from filing legitimate nondiscrimination grievances, lest an adverse determination foreclose a civil rights action.

Neither judicial economy nor the doctrine of collateral estoppel inexorably requires this Court to conclude that the needs of judicial economy outweigh the needs and rights of persons in the state classified service to exercise their civil service grievance hearing rights without potentially sacrificing their rights and remedies under the Civil Rights Act.

VI

Applying the conventional collateral estoppel doctrine in this case charging sex and race discrimination means that a state civil servant who protests, here a transfer, in another case, discipline, on any basis—whether on the basis of violation of civil rights or violation of other rights—runs the risk of a factual finding that may bar his civil rights action. A state civil servant who wishes to preserve his right to a jury determination in a circuit court civil rights action of his claims of sex or race discrimination must forgo filing a grievance before the Civil Service Commission regarding any issue that might result in a finding that the action taken by the department was for bona fide reasons.

It is a feature of civil rights litigation that a person claiming a violation of his civil rights has a multiplicity of remedies.[23] That is a constitutional and legislative choice annoying to some, but a choice that this Court should honor by denying preclusion of a circuit court action where there

[23] Const 1963, art 5, § 29; MCL 37.2101 et seq.; MSA 3.548(101) et seq.

were sound reasons for first seeking administrative relief.

Neither the framers of the constitution nor the Legislature intended that an employee in the state civil service would be put to such an election of which right to assert, and constrained to forgo one right to protect another.

The framers of the constitution, in providing for the plenary power of the Civil Service Commission,[24] and the Legislature, in providing for a circuit court civil rights action, did not intend to preclude a state civil servant who unsuccessfully pursued a grievance involving a civil rights violation before the Civil Service Commission from obtaining a jury determination of the civil rights claim in a legal action expressly preserved by the constitution to all citizens.[25]

The policies underlying the judicially created doctrines of collateral estoppel and preclusion do not require that those doctrines be applied so rigidly as to force such an election of which right to assert and which right to abandon to protect the other right. The policies, protective of the civil service rights of state employees and of the civil rights of all citizens, as expressed in the constitution, and protective of civil rights, as expressed in the statutes, oblige us to protect both a state employee's civil service grievance rights *and* his circuit court civil rights cause of action.

Because a transfer in violation of a state civil

[24] Const 1963, art 11, § 5; *Viculin v Dep't of Civil Service,* 386 Mich 375; 192 NW2d 449 (1971).

[25] Const 1963, art 5, § 29, establishing the Civil Rights Commission, provides:

Nothing contained in this section shall be construed to diminish the right of any party to direct and immediate legal or equitable remedies in the courts of this state.

servant's civil rights would also be grievable before the Civil Service Commission, a civil servant claiming that his transfer was discriminatory should be encouraged to advance that claim before a Civil Service Commission hearing officer at the same time he advances his noncivil rights grievances so that the hearing officer has all the claims before him and can review all the evidence, and make a decision on all the claims.

A circuit court civil rights action is not "repetitive" or unnecessarily duplicative of a civil service hearing. A civil service hearing was required to provide Nummer with an opportunity to present his breach of enforceable promise and merit rule grievances. Permitting plaintiffs like Nummer to raise the civil rights issue before the Civil Service Commission without risking preclusion of a circuit court civil rights claim might, in particular cases, actually conserve judicial resources.

A proceeding before the Civil Service Commission ordinarily moves more speedily than a circuit court civil rights action, and provides an opportunity for mediation and rectification of an employee's grievance that might avoid unnecessary litigation. Providing such an opportunity is in the public interest, the interest of the Civil Service Commission, the department of state government for which the civil servant works, and the civil servant.

The public interest in preserving the efficacy of Civil Service Commission hearings as a means of protecting civil servants and the administration of state government from untoward action by a state governmental official militates against applying the doctrine of collateral estoppel in a manner that will tend to eliminate Civil Service Commission hearings respecting employee complaints regarding transfers or discipline in any case in

which the employee may wish to preserve for adjudication by a jury in circuit court claims of sex, race, or other discrimination.

VII

The majority's assertion that had Nummer complained to the Civil Rights Commission and appealed to the circuit court, a § 801 circuit court civil rights action would be precluded by an adverse decision in the circuit court,[26] ignores that the claimant is not ordinarily a party in a Civil Rights Commission proceeding[27] and ordinarily is not represented by separate counsel.[28]

The majority references no decision of the Court of Appeals in which a party sought to retry in a circuit court civil rights action issues decided on the merits by the Civil Rights Commission and affirmed or reversed on appeal in the circuit court. There may be no such case simply because the Civil Rights Commission takes relatively few cases to formal hearing, and, when it does, the complainant may generally prevail or accept an adverse determination following a full hearing on the merits and a determination de novo on appeal to the circuit court.

Such a scenario cannot be compared to adjudica-

[26] *Ante,* p 548.

[27] But see 1 Restatement Judgments, 2d, § 41(d), p 393 stating that a person who is not a party, but who is represented by a party is bound as though he were a party and that a person is represented by a party who is an official "invested by law with authority to represent the person's interests," and comment d, p 397.

Under the circumstance that the claimant may maintain a separate circuit court civil rights action, it is at least unresolved whether the Civil Rights Commission or the attorney general may represent a claimant if the effect might or would be to preclude maintenance of a separate circuit court action.

[28] See, e.g., n 36, where an action commenced before the Civil Rights Commission was styled *Dep't of Civil Rights ex rel Johnson v Silver Dollar Cafe,* 441 Mich 110; 490 NW2d 337 (1992).

tion of a civil rights claim by a civil service hearing officer, one page affirmances by the Employment Board and the Civil Service Commission, and further review by the circuit court under the deferential reviewing standard requiring that the commission's decision be affirmed if supported by competent, material, and substantial evidence on the whole record.[29]

In *Walker v Wolverine Fabricating & Mfg Co, Inc*, 425 Mich 586; 391 NW2d 296 (1986), the complainant appealed from a decision of the Civil Rights Commission dismissing his complaint after finding that there were not sufficient grounds to issue a charge. It is one thing to construe the constitutional provision, "appeals [from the Civil Rights Commission] shall be tried de novo,"[30] as not permitting expansion of the record *on appeal* where the issue is whether the Civil Rights Commission properly declined to bring a charge, and, thus, to decide the merits. It would be quite another to so construe that constitutional provision where the circuit court reviews a decision by the Civil Rights Commission *on the merits.*

An appeal (under article 6 of the Civil Rights Act) from the Civil Rights Commission truly tried de novo in circuit court on the merits, with a full record made by counsel for the complainant, probably would preclude a circuit court action brought in the claimant's name under § 801 (article 8 of the Civil Rights Act), especially if it was the claimant who appealed from the Civil Rights Commission to the circuit court.[31]

VIII

The majority states that "review under a compe-

---

[29] Const 1963, art 6, § 28; *Viculin*, n 24 *supra.*
[30] Const 1963, art 5, § 29.
[31] MCL 37.2606; MSA 3.548(606).

tent, material, and substantial evidence standard" "is not 'on the merits.' "[32] Although such appellate review is not de novo, it is nevertheless supposed to be a search of the record and a review to determine whether there is the requisite evidentiary support for the decision "on the merits."

IX

The majority states that the framers of the Constitution of 1963 desired, as set forth in art 5, § 29, to extend to "private employment"[33] the protection provided in the civil service provisions of the constitution against discrimination.[34] This is inconsistent with recognition that there is no need for a state civil service employee to exhaust his administrative remedies[35]—he can proceed under the Civil Rights Act directly in the circuit court which, thus, provides remedies not limited to "private employment."

There are a large number of governmental employees who are not in the state classified civil service: state employees who are excepted from the classified state civil service, and county, city, and township employees, all of whom are covered by the Civil Rights Act.

X

The following statement appears on pp 561-562 of the dissenting opinion:

The standard of review set forth in the Civil Rights Act indicates that the Legislature intended

[32] *Ante,* p 544 and n 8.

[33] *Id.,* p 553.

[34] Const 1963, art 11, § 5.

[35] See n 20.

plaintiffs to have an independent review of their civil rights claims in a judicial forum. Section 606 of the act provides that "[a]n appeal before the circuit court shall be reviewed de novo." MCL 37.2606; MSA 3.548(606). Allowing a judicial proceeding when plaintiffs pursue their administrative remedy in the Civil Rights Commission, but denying a similar treatment when plaintiffs seek adjudication by the Civil Service Commission violates the goals of the Civil Rights Act.

·   The discussion of § 606 (article 6) as the source of the right to an "independent determination" overlooks that § 606 concerns only an appeal from the Civil Rights Commission. The source of the right to maintain this separate action in circuit court is not § 606 in article 6, but article 8.

The Civil Rights Act provides, in article 6, for the filing of a complaint with the Civil Rights Commission and for an appeal from its decision to the circuit court, which shall *review* the decision of the commission *de novo*.[36]

The Civil Rights Act further provides, in article 8, that a person alleging a violation of the Civil Rights Act may bring a civil action for damages in the circuit court, and recover, as part of his damages, reasonable attorneys fees.[37]

This action *does not seek appellate review* by the circuit court of a decision of the Civil Rights Commission. (Nor does this action seek appellate review by the circuit court of a decision of the Civil Service Commission.) This is a separate, origi-

---

[36] MCL 37.2605; MSA 3.548(605).

An appeal before the circuit court shall be reviewed *de novo*. MCL 37.2606; MSA 3.548(606).

In *Dep't of Civil Rights ex rel Johnson v Silver Dollar Cafe*, n 28 *supra*, this Court held that the Court of Appeals reviews the judgment of the circuit court reviewing a decision of the Civil Rights Commission under the clearly erroneous standard.

[37] MCL 37.2801; MSA 3.548(801).

nal circuit court action commenced pursuant to article 8, and cannot properly be analogized to an article 6 action seeking appellate review by the circuit court of a decision of the Civil Rights Commission.

An article 8 action is triable by a jury. In *Marsh,* as here, the plaintiff filed an article 8 action in the circuit court claiming that the Department of Civil Service and the Treasury Department unlawfully discriminated on the basis of sex and race.[38] The record to be made in an action triable before a jury is not limited, and cannot be limited, by the record made before another tribunal such as the Civil Rights Commission.

---

[38] The Court of Appeals also ruled:

Jurisdiction of the Civil Rights Commission and the circuit court over civil rights claims is concurrent, and an aggrieved individual may proceed simultaneously in both forums.

\* \* \*

The classified civil service is not exempted from legislation prohibiting discrimination and securing civil rights in employment. Thus the Elliott-Larsen and Handicappers' Civil Rights Acts apply to employees of the classified civil service, and the Civil Rights Commission and circuit court have jurisdiction over discrimination claims of aggrieved employees. [*Marsh,* n 17 *supra,* pp 563-569.]